OPINION JUDGMENT ENTRY
{¶ 1} Defendant-appellant Larry Aber appeals his conviction entered by the Licking County Court of Common Pleas on one count of possession of marijuana, in violation of R.C.2925.11(A)(C)(3)(c); one count of aggravated possession of drugs, in violation of R.C. 2925.11(A)(C)(1)(a); and one count of tampering with evidence, in violation of R.C. 2921.12(A)(1), following his plea of no contest to the charges. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS
{¶ 2} On March 28, 2003, the Licking County Grand Jury indicted appellant on the aforementioned charges. Appellant entered a plea of not guilty to the indictment at his arraignment on April 14, 2003. On April 23, 2003, appellant filed a motion to suppress. The trial court conducted a hearing on the motion on July 1, 2003. The following evidence was adduced at the hearing.
{¶ 3} Patrolman John Brnjic of the Newark Police Department testified, on March 15, 2003, an individual by the name of Thomas McAllister was arrested by the Mt. Vernon Police Department on warrants issued by the Newark Police Department. Patrolman Brnjic proceeded to Mt. Vernon to transport McAllister to the Newark Police Department. Upon returning to the station, Brnjic interviewed McAllister relative to a theft warrant and other charges on which McAllister was wanted. During the course of the interview, McAllister admitted his involvement in several crimes, and provided Brnjic and Det. Wells with information regarding other unsolved crimes. Det. Wells had been investigating many of these crimes and was able to verify the information provided by McAllister. McAllister also provided the officers with information regarding drug activity in the Newark area. McAllister identified a drug house on Riley Street operated by Brad Dougherty, and provided information about a drug house located at Oak and Elmwood Streets. Brnjic was able to independently verify this information. McAllister also identified appellant's home at 27 Wyoming Street as another drug location. McAllister gave the exact location and description of the home, and indicated appellant was dealing marijuana from the home. McAllister also said he had taken two pounds of marijuana out of appellant's home a week prior to the day of his interview. McAllister stated appellant had large quantities of marijuana at the residence.
{¶ 4} Patrolman Brnjic testified he believed he had probable cause to seek a search warrant for appellant's home, however, he chose to conduct a "knock and talk" in an attempt to elicit cooperation from appellant. Brnjic, together two other officers, proceeded to appellant's residence. At 1:43 a.m., the officers knocked on the door of the residence and met appellant. Brnjic explained to appellant the reason for the call and informed him of the information the department had received. Brnjic told appellant the officers were seeking his cooperation, and wanted to get a statement from him and seize any drugs in the home. Brnjic asked appellant if he had 50 pounds of marijuana in the house, to which appellant responded he did not have 50 pounds of marijuana. Brnjic then asked appellant if he had 100 pounds of marijuana in the home, to which appellant replied he did not have 100 pounds of marijuana.
{¶ 5} The officers realized appellant was not going to cooperate. Brnjic informed appellant he was going to contact the prosecutor and obtain a search warrant. The officer then advised appellant he could either go inside the premise with an officer or wait outside or in the cruiser. Patrolmen Wells and Alestock remained at the premises with appellant while Brnjic left to obtain the search warrant. While Brnjic was preparing the warrant at the station, Wells radioed into the station, requesting a sergeant because appellant slammed the front door and locked himself inside the house. Sgts. Heron and Riley arrived at the residence and forced entry.
{¶ 6} Sgt. David Heron testified he and Sgt. Riley arrived at the scene in order to secure the residence. After announcing, Sgt. Heron tried two or three times to kick the door, which appellant eventually opened. The sergeants checked the residence for other people and waited to serve the search warrant.
{¶ 7} Sgt. Craig Riley testified he checked the living room area and the bathroom while Sgt. Heron cleared the rest of the house. Inside the bathroom, Sgt. Riley found a large of quantity of marijuana floating inside the toilet bowl. The lid to the toilet was up when he entered the bathroom.
{¶ 8} Wells testified, after Brnjic left, he asked appellant if he wanted to wait in the cruiser. Wells explained to appellant he could stay in his own home, but had to stand in the doorway so the officer could see his every movement. Appellant asked Wells if he could telephone his attorney. Upon speaking with his attorney, appellant told Wells, "My attorney advised me that I should shut the door and not speak to you." Despite Wells' instructions to the contrary, appellant shut and locked the door. Sgts. Riley and Heron arrived at the scene and the officers attempted the force entry into the residence. After Sgt. Heron kicked the door three times, appellant unlocked the door and the officers proceeded inside. Sgt. Riley and Patrolman Alestock secured appellant. Sgt. Heron and Patrolman Wells conducted a protective sweep of the home to look for any other persons. Wells testified marijuana and drug paraphernalia as well as a small caliber handgun were found in the residence.
{¶ 9} Sgt. Heron testified he was informed by Patrolman Brnjic of the situation at 27 Wyoming Street. Brnjic advised Sgt. Heron he had spoken with Judge Spahr and to make entry to secure the residence prior to the warrant being signed. Sgt. Heron proceeded to the residence to assist the other officers in making entry. Upon his arrival, he observed Patrolman Wells at the front door. The officers announced, "Police," and Sgt. Heron kicked the door two or three times before appellant opened it. Once inside, the officers checked the residence for other individuals and waited for the search warrant. Sgt. Riley testified similarly.
{¶ 10} Via Judgment Entry filed August 20, 2003, the trial court denied appellant's motion to suppress, finding the evidence set forth in Brnjic's affidavit provided sufficient probable cause for the issuance of a search warrant. The trial court additionally found the officers were permitted to secure the residence to prevent the destruction of evidence. On October 10, 2003, appellant appeared before the trial court and entered a plea of no contest to the charges contained in the indictment. The trial court accepted appellant's pleas and found appellant guilty. The trial court conducted a sentencing hearing on November 7, 2003.
{¶ 11} It is from his conviction appellant appeals, raising the following assignment of error:
{¶ 12} "Where the court, overrules a motion to suppress evidence where police initiate a "knock and talk" procedure, asking for consent to search a homeowner's premises, then tell the homeowner he is free to leave, but cannot enter his own house, while other officers are trying to obtain a search warrant, and the homeowner then enters his premises, and the police then force entry to the house, and search, an illegal search has occurred and any evidence obtained thereby must be suppressed, and the results of the search warrant, issued in part on the affiant's fabrications, and the results of the illegal entry, must also be suppressed."
 I
{¶ 13} In his sole assignment of error, appellant maintains the trial court erred in overruling his motion to suppress.
{¶ 14} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning (1982), 1 Ohio St.3d 19;State v. Klein (1991), 73 Ohio App.3d 486; State v. Guysinger
(1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See:State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry
(1994), 95 Ohio App.3d 93, 96; State v. Claytor (1993),85 Ohio App.3d 623, 627; and State v. Guysinger, supra. As the United States Supreme Court held in Ornelas v. U.S. (1996),517 U.S. 690 116 S.Ct. 1657, 134 L.E2d 911" . . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
{¶ 15} Appellant argues there was insufficient probable cause to justify the issuance of the search warrant. Given the facts set forth in Patrolman Brnjic's affidavit, we disagree. The affidavit included information about appellant provided by the informant, Thomas McAllister, which he relayed to officers during his confession to crimes in which he was involved. The officers interviewing McAllister verified and corroborated all of the information he provided. A voluntary confession, not made pursuant to a plea arrangement with the prosecution, which implicates both the accomplice and the defendant, has sufficient indicia of reliability for its admission. State v. Marshall
(2000), 136 Ohio App.3d 742, 748.
{¶ 16} Assuming, arguendo, the search warrant was not supported by probable cause, we find the trial court did not err in denying appellant's motion to suppress under the "good faith exception" to the exclusionary rule set forth in United States v. Leon
(1984), 468 U.S. 897, and adopted by the Ohio Supreme Court inState v. Wilmoth (1986), 22 Ohio St.3d 251. Under the "good faith exception", the exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate, but ultimately found to be unsupported by probable cause. State v.George (1980), 45 Ohio St.3d 325, 330, citing Leon, supra at 918-23, 926. However, even under the "good faith exception", suppression of evidence is appropriate where any of the following occurs:(1) * * * the magistrate or judge * * * was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth * * *;(3) an officer purports to rely upon * * * a warrant based upon an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Leon, supra at 923.
{¶ 17} Upon review of the record, we do not find any of the circumstances supporting the suppression of evidence occurred. The record belies any assertion by appellant police misled the judge or that the affidavit submitted in support of the search warrant was so lacking in probable cause as to render official belief in its existence entirely unreasonable. See, Affidavit and Search Warrant.
{¶ 18} Appellant further argues the protective sweep was inappropriate because there were no exigent circumstances justifying the officers' entry into the residence. Even if we find the protective sweep of the residence was not constitutionally sound, such does not render the trial court's denial of appellant's motion to suppress erroneous. Because a valid search was being obtained, any evidence improperly seized during the protective sweep would have been discovered during the execution of the search warrant; therefore, is admissible under the inevitable discovery rule.
{¶ 19} Accordingly, we overrule appellant's sole assignment of error.
{¶ 20} The judgment of the Licking County Court of Common Pleas is affirmed.
Judgment affirmed.
Hoffman, P.J., Farmer, J. and Wise, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.