[Cite as *State v. McCullough*, 2014-Ohio-1696.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2013-07-021 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N<br>4/21/2014 |
| - vs - | : | |
| | : | |
| ANNDREA M. McCULLOUGH, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. 13CRI00089

Jess C. Weade, Fayette County Prosecuting Attorney, 110 East Court Street, Washington C.H., Ohio 43160, for plaintiff-appellee

Melissa S. Upthegrove, 254 East Court Street, Washington C.H., Ohio 43160, for defendant-appellant

**S. POWELL, J.**

{¶ 1} Defendant-appellant, Anndrea M. McCullough, appeals from the decision of the Fayette County Court of Common Pleas denying her motion to suppress. For the reasons outlined below, we affirm.

{¶ 2} On the afternoon of April 20, 2013, Detective Larry McGarvey of the Fayette County Sheriff's Office received word from a confidential informant that James Babineau

would be traveling to Dayton that day in order to pick up heroin and bring it back to Fayette County. Detective McGarvey had used the confidential informant intermittently since 2001 and had never known the confidential informant to provide false information. Detective McGarvey was also familiar with Babineau as he had dealings with him in the past and knew he was involved in drug trafficking.

{¶ 3} After receiving this information, Detective McGarvey drove his unmarked vehicle to Babineau's residence where he observed an unidentified male loading a flat screen television into a PT Cruiser parked outside Babineau's mobile home. Not seeing anything overly suspicious, Detective McGarvey contacted the confidential informant who informed him that Babineau was going to sell the television at a local pawn shop in order to raise the money necessary to purchase the heroin in Dayton.

{¶ 4} Detective McGarvey then drove to the pawn shop where the sale was to take place. Once there, Detective McGarvey observed the same unidentified male, as well as Babineau and Babineau's mother, exit the pawn shop and get into the PT Cruiser. Detective McGarvey then watched as the vehicle drove to a nearby grocery store. While at the grocery store, Detective McGarvey saw Babineau make contact with several individuals in a blue vehicle. Detective McGarvey, however, was unable to identify any of those individuals within the vehicle. Detective McGarvey then watched as Babineau got into the PT Cruiser; McGarvey then followed the PT Cruiser as it made its way back to Babineau's mobile home.

{¶ 5} Once he arrived back at Babineau's residence, Detective McGarvey again contacted the confidential informant who told him that Babineau needed $100 more to make the trip to Dayton to purchase the heroin. Detective McGarvey then offered to give the confidential informant $50 to give to Babineau. As Detective McGarvey testified:

> I sat in the area for a little while, I ended up contacting my source
> again and asked if I could meet with them and give them 50.00
> told them to make contact with Mr. Babineau and tell them they

> could come up with 50.00. I figured that way I could get them out
> of the trailer park and get to a place where I knew they would be
> and that I could actually observed from that point[.]

After providing the confidential informant with the $50 to give to Babineau, the confidential informant contacted Detective McGarvey and told him of where the exchange was going to take place. The confidential informant also told Detective McGarvey that immediately after the money was exchanged, Babineau would travel to Dayton to purchase the heroin.

{¶ 6} Upon arriving at the exchange site, Detective McGarvey saw a blue Monte Carlo pull up with Babineau in the passenger seat. The vehicle was driven by a female later identified as McCullough. Detective McGarvey testified he knew McCullough was involved in drug trafficking with Babineau, but had never had any direct contact with her. Detective McGarvey, however, was not sure if the blue Monte Carlo was the same blue vehicle that he had seen outside the grocery store earlier that day.

{¶ 7} Following this exchange, McCullough and Babineau drove the blue Monte Carlo onto State Route 35 heading towards Dayton. Detective McGarvey then followed McCullough and Babineau into downtown Dayton when he lost sight of their vehicle after it exited into an area known for high drug and criminal activity. Unable to locate the car, Detective McGarvey exited the downtown Dayton area and looped back around onto State Route 35. He then stopped his unmarked vehicle near the Bickett Road exit in hopes of spotting McCullough and Babineau as they traveled back towards Fayette County.

{¶ 8} After some time, Detective McGarvey spotted McCullough and Babineau in the same blue Monte Carlo traveling towards Fayette County on State Route 35. After locating the vehicle, Detective McGarvey radioed ahead to Deputy Clint Sines and Deputy Bruce Stolsenberg who were stationed on State Route 35 conducting road patrol. Detective McGarvey then began following the blue Monte Carlo, which he testified was traveling at speeds ranging between 65 to 85 m.p.h.

{¶ 9} Once McCullough and Babineau crossed into Fayette County, Deputy Stolsenberg clocked the blue Monte Carlo traveling at 67 m.p.h., two m.p.h. over the posted speed limit. Detective McGarvey then instructed Deputy Stolsenberg to initiate a traffic stop on the vehicle. As Detective McGarvey testified, "[t]hat with the information we had and we had a 67 let's get them pulled over."

{¶ 10} After the car was stopped, McCullough and Babineau were removed from the vehicle and placed in separate police cruisers so that Deputy Sines could conduct a canine sniff of their vehicle. They were also read their *Miranda* rights. Although the canine alerted on the blue Monte Carlo, the subsequent search of the vehicle did not uncover any narcotics. Deputy Sines then conducted a canine sniff of the two police cruisers where McCullough and Babineau were sitting. The canine alerted on both cruisers. The canine also conducted a sniff on a third police cruiser that was empty, but it did not alert on the vehicle. It is undisputed that no narcotics were found in the two police cruisers either before or after the canine sniff of the cruisers was conducted. Following the search of the vehicles, McCullough and Babineau were taken to the Fayette County Sheriff's Office so that a search warrant could be obtained for their persons.

{¶ 11} Once they arrived at the sheriff's office, McCullough was taken to the jail, whereas Babineau was taken to the annex building. When asked why the two were separated, Detective McGarvey testified he did not want the two together and that McCullough was taken to the jail so that a female corrections officer could check her for weapons. As Detective McGarvey testified, "it becomes difficult with females when we don't have a female deputy available we can't do a proper pat down of them or any kind of search." In addition, Deputy Stolsenberg testified, "I am much more comfortable when I have the circumstances to take someone and to transport them into an office and let a female officer take care of a search [for weapons] if one is needed."

- 4 -

{¶ 12} Upon arriving at the jail, McCullough, although merely being held under an investigative detention, was ordered to change out of her street clothes and into proper jail attire. As she was changing out of her clothes, McCullough produced two baggies containing heroin that she had concealed on her body. It is undisputed that Detective McGarvey was actively typing out a search warrant for both McCullough and Babineau when McCullough turned over the drugs. According to Deputy Stolsenberg, this occurred approximately 30 minutes after McCullough was taken to the jail.

{¶ 13} McCullough was subsequently arrested and charged with, among other things, complicity to commit trafficking in heroin and possession of heroin. The charges also contained a forfeiture specification for the blue Monte Carlo. McCullough then filed a motion to suppress, which the trial court denied after holding a hearing. In so holding, the trial court found that the initial stop of the vehicle was proper and that, even though she was subject to an "equivalent of a strip search" at the jail, the inevitable-discovery doctrine nevertheless applied. After the trial court denied her motion to suppress, McCullough agreed to enter a plea of no contest. The trial court accepted McCullough's plea and sentenced her to a mandatory two-year prison term.

{¶ 14} McCullough now appeals from the trial court's decision denying her motion to suppress, raising three assignments of error for review. For ease of discussion, McCullough's second and third assignments of error will be addressed together.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS.

{¶ 17} In her first assignment of error, McCullough argues the trial court erred by denying her motion to suppress in regards to the initial stop and subsequent detention. In support of this claim, McCullough argues the trial court erred by denying her motion to

- 5 -

suppress because the officers did not have probable cause to stop her vehicle. McCullough also argues the trial court erred by denying her motion to suppress as there was "no justification" to detain her while the canine sniff of her vehicle was conducted. These arguments lack merit.

{¶ 18} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Johnson*, 12th Dist. Butler No. CA2012-11-235, 2013-Ohio-4865, ¶ 14; *State v. Eyer*, 12th Dist. Warren No. CA2007-06-071, 2008-Ohio-1193, ¶ 8. In turn, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14; *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038, ¶ 10. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Thomas*, 12th Dist. Warren No. CA2012-10-096, 2013-Ohio-3411, ¶ 18, quoting *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 19} As noted above, McCullough initially argues the trial court erred by denying her motion to suppress because the officers did not have probable cause to stop her vehicle. The stop of a motor vehicle, even if for a limited purpose or a brief amount of time, constitutes the seizure of a person under the Fourth Amendment. *State v. Hessel*, 12th Dist. Warren No. CA2009-03-031, 2009-Ohio-4935, ¶ 10, citing *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-558, 96 S.Ct. 3074 (1976). A noninvestigatory stop, one of two traffic

stops recognized in Ohio, is reasonable for Fourth Amendment purposes where an officer has probable cause to believe a criminal act has occurred, such as where an officer observes a traffic violation. *State v. Feerer*, 12th Dist. Warren No. CA2008-05-064, 2008-Ohio-6766, ¶ 10; *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 22 (finding "an officer who has probable cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop"). This is true "even if the officer had some ulterior motive for making the stop, such as suspicion that the violator was engaging in more nefarious criminal activity." *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996), paragraph one of the syllabus.

{¶ 20} In this case, the record indicates the officers observed McCullough traveling on State Route 35 at a speed of 67 m.p.h., two miles over the posted speed limit. Although de minimus, this traffic violation provided the officers with probable cause to initiate a traffic stop of McCullough's vehicle. *State v. Willis*, 12th Dist. Butler No. CA2012-08-155, 2013-Ohio-2391, ¶ 19. As the officers had probable cause to stop McCullough for speeding, the initial stop of her vehicle was not unreasonable under the Fourth Amendment to the United States Constitution. This is true even though the officers may have had an ulterior motive for making the stop, such as their suspicion that McCullough and Babineau were engaged in more serious criminal drug activity. Therefore, McCullough's first argument is without merit and is overruled.

{¶ 21} Next, McCullough argues the trial court erred by denying her motion to suppress as there was "no justification" to detain her while the canine sniff of her vehicle was conducted. When detaining a motorist for a traffic violation, "a police officer may detain the motorist for a time period sufficient to allow the officer to issue a ticket or a warning, or to run a computer check on the driver's license, registration and vehicle plates." *State v. Coleman*, 12th Dist. Fayette No. CA2011-09-020, 2012-Ohio-3630, ¶ 11, citing *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 12. During this time, police may conduct a canine sniff of

the exterior of a lawfully detained vehicle even without the presence of a reasonable and articulable suspicion of drug-related activity. *State v. Dixon*, 12th Dist. Warren No. CA2008-01-006, 2009-Ohio-559, ¶ 15; *State v. Bolden*, 12th Dist. Preble No. CA2003-03-007, 2004-Ohio-184, ¶ 18. It is well-established that "an alert by a trained narcotics dog provides law enforcement with probable cause to search the vehicle for contraband." *State v. Kelly*, 188 Ohio App.3d 842, 2010-Ohio-3560, ¶ 25 (12th Dist.).

{¶ 22} Contrary to McCullough's claim otherwise, the officers were not required to have a reasonable and articulable suspicion of drug activity in order to conduct a canine sniff of her vehicle. In turn, although we believe the evidence in this case would support such a contention, it is immaterial whether the officers had a reasonable and articulable suspicion of criminal activity prior to removing McCullough and Babineau from the vehicle in order to conduct the canine sniff. Moreover, the evidence submitted at the suppression hearing indicates the duration of the stop did not impermissibly expand McCullough's detention, as the canine sniff was done within mere minutes after the officers stopped her vehicle. *See State v. Howard*, 12th Dist. Preble Nos. CA2006-02-002 and CA2006-02-003, 2006-Ohio-5656, ¶ 23-28; *State v. Bolden*, 12th Dist. Preble No. CA2003-03-007, 2004-Ohio-184, ¶ 19-25. Once the canine alerted on the cruisers in which McCullough and Babineau were seated, the officers were provided with even further justification to support their reasonable and articulable suspicion that criminal activity was afoot. These facts also serve as a pertinent factor in the officers' probable cause inquiry in support of the search warrant for their persons. Therefore, McCullough's second argument likewise lacks merit and is also overruled.

{¶ 23} As we have found no merit to either of McCullough's arguments advanced under her first assignment of error, McCullough's first assignment of error is overruled.

{¶ 24} Assignment of Error No. 2:

- 8 -

{¶ 25} THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED FROM A STRIP SEARCH AND A BODY CAVITY SEARCH CONDUCTED IN VIOLATION OF APPELLANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES.

{¶ 26} Assignment of Error No. 3:

{¶ 27} THE TRIAL COURT ERRED WHEN CONCLUDING THE CONTRABAND FOUND ON APPELLANT WAS THE RESULT OF THE "INEVITABLE DISCOVERY" DOCTRINE IN VIOLATION OF APPELLANTS [SIC] FOURTH AMENDMENT RIGHT.

{¶ 28} In her second and third assignments of error, McCullough argues the trial court erred by denying her motion to suppress based on the inevitable-discovery doctrine when the trial court found she was subject to an improper and unconstitutional "strip search" and "body cavity search" in violation of R.C. 2933.32.[1] We disagree.

{¶ 29} Under the inevitable-discovery doctrine, evidence that is illegally obtained is properly admitted "once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." *State v. Farrey*, 9th Dist. Summit No. 26703, 2013-Ohio-4263, ¶ 17, quoting *State v. Perkins*, 18 Ohio St.3d 193 (1985), syllabus. The doctrine generally applies where, "prior to the misconduct, authorities were actively pursuing an alternate line of investigation that would have resulted in discovery of the evidence, or authorities would have subsequently discovered the evidence through a standardized procedure or established routine." *State v. Cundiff*, 10th Dist. Franklin No.

---

1. We note that the alleged "strip search" and "body cavity search" was conducted after McCullough was transported to the jail for holding and ordered to change out of her clothes and into jail attire while a search warrant was being obtained. After reviewing the record, we question whether McCullough was subject to a "strip search" and "body cavity search" as those terms are defined by R.C. 2933.32(A)(1) and (2). This is particularly true given the fact that McCullough herself turned over the two baggies containing heroin that she had been concealing on her body when ordered to change into the jail attire. However, besides noting its disagreement with the trial court's decision within its brief, the state did not appeal from the trial court's finding McCullough was subject to an unconstitutional search of her person. Therefore, we will not address any potential issues regarding that finding here.

12AP-483, 2013-Ohio-1806, ¶ 20, citing *State v. Bradford*, 4th Dist. Adams No. 09CA880, 2010-Ohio-1784, ¶ 55. In other words, "the state must show that police were actively pursuing an alternate line of investigation, one untainted by the illegality that took place prior to the particular misconduct." *State v. Porter*, 178 Ohio App.3d 304, 2008-Ohio-1149, ¶ 43 (2d Dist.). Otherwise, the inevitable-discovery doctrine would apply even if police merely "could have discovered" the evidence, rather than if they "would have discovered" the evidence. *Id.*, citing *State v. Pearson*, 114 Ohio App.3d 153 (3d Dist.1996).

{¶ 30} Here, the record reveals that the officers were attempting to obtain a search warrant when McCullough turned over the two baggies of heroin she had concealed on her body. As Detective McGarvey testified:

> [THE STATE]: So as you responded to the Judge you were in the process of actually typing up search warrants?
>
> MCGARVEY: Yes.
>
> [THE STATE]: And that was for one or both of the subjects?
>
> MCGARVEY: I was going to do a warrant on both of the subjects.
>
> [THE STATE]: And in the middle of typing up the warrants you receive a phone call from the jail?
>
> MCGARVEY: Yes Sir.
>
> [THE STATE]: And they informed you about what?
>
> MCGARVEY: They stated to me about dressing Ms. McCullough out that she had actually pulled out two bags containing which they believed to be heroin and handed it to the deputies in the jail.

Because the officers were attempting to obtain a search warrant at the time the two baggies of heroin were turned over, we find this case markedly different from those cases where officers could have obtained a warrant, but simply choose not to do so. *Compare State v. Miller*, 77 Ohio App.3d 305, 316 (8th Dist.1991) (finding the inevitable-discovery doctrine

could apply if police "were attempting to get a warrant independent of [a warrantless] search"); *State v. Aber*, 5th Dist. Licking No. 2003CA106, 2004-Ohio-4116, ¶ 18 (finding any evidence improperly seized would have been discovered during the execution of the search warrant that was then being obtained); *United States v. Lewis*, 672 F.Supp.2d 827, 835 (S.D.Ohio 2009) (finding "the limited evidence seized during the initial entry would have been discovered through lawful means very shortly thereafter, namely, through the warrant for which Detective Beane had already applied"); *with State v. Coyle*, 4th Dist. Ross No. 99 CA 2480, 2000 WL 283073, *6 (Mar. 15, 2000) (finding no merit to "the state's argument that the inevitable discovery doctrine should apply just because officers *could* have obtained a warrant had they sought one"); *United States v. Johnson*, 22 F.3d 674, 683 (6th Cir.1994) (rejecting the logic that "simply because the police could have obtained a warrant, it was therefore inevitable that they would have done so," noting that such a ruling "would mean that there is inevitable discovery and no warrant requirement whenever there is probable cause").

{¶ 31} Again, as the record indicates, Detective McGarvey received information from a confidential informant that Babineau was planning to travel to Dayton to pick up heroin and bring it back to Fayette County. Based upon this information, Detective McGarvey followed Babineau for a period of several hours as Babineau gathered the money necessary for the purchase. Detective McGarvey then observed McCullough and Babineau, both of whom he knew were involved in drug trafficking activities, pull up in a blue Monte Carlo and stop at the money exchange site. While there, Detective McGarvey watched as they met with the confidential informant who provided them with $50.

{¶ 32} Detective McGarvey then followed McCullough and Babineau as they travelled on State Route 35 towards Dayton where they exited into an area known for high drug and criminal activity. Although he lost sight of their vehicle while in Dayton, Detective McGarvey later spotted McCullough and Babineau in the blue Monte Carlo traveling back towards

Fayette County from Dayton. Thereafter, once a traffic stop was initiated, a canine sniff was conducted, wherein the canine alerted to the presence of drugs in the blue Monte Carlo, as well as in the two police cruisers in which McCullough and Babineau were sitting.

{¶ 33} After a thorough review of the record, we find the facts and circumstances of this case provides more than enough evidence to support a probable cause finding to issue a search warrant. "A search warrant may be issued upon a showing of probable cause based upon the totality of the circumstances presented in an affidavit." *State v. Quinn*, 12th Dist. Butler No. CA2011-06-116, 2012-Ohio-3123, ¶ 20. "To determine whether probable cause exists, a court must examine the 'totality of the circumstances' and make a 'practical, commonsense decision whether, given all the circumstances there [was] a fair probability that contraband or evidence of a crime [would] be found in a particular place.'" *State v. Christopher*, 12th Dist. Clermont No. CA2009-08-041, 2010-Ohio-1816, ¶ 10, quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317 (1982). Under the totality of the circumstances analysis, "factors to be considered include an officer's observation of some criminal behavior by the defendant, furtive or suspicious behavior, flight, events escalating reasonable suspicion into probable cause, and association with criminals and locations." *Id.*

{¶ 34} In making this determination, we note that such finding is not based solely on the fact that a search did not uncover any drugs in any of the three vehicles after the canine alerted on the same. *See State v. McCorvey*, 11th Dist. Ashtabula No. 2010-A-0038, 2011-Ohio-3627, ¶ 35 (holding a canine's alert to defendant's car and its subsequent negative search of the vehicle "did not independently provide probable cause to search" defendant's person); *State v. Kay*, 9th Dist. Wayne No. 09CA0018, 2009-Ohio-4801, ¶ 16 (finding "negative search of the vehicle does not necessitate the conclusion the drugs must therefore be with one of the occupants of the vehicle" after a canine alerted on the vehicle). Rather, as outlined above, the officers had a multitude of additional factors that would have established

- 12 -

probable cause to justify issuing, at minimum, a search warrant for McCullough's person. *State v. Young*, 12th Dist. Warren No. CA2011-06-066, 2012-Ohio-3131, ¶ 22-23 (finding arrest was supported by probable cause where officers did not rely solely on canine alert of vehicle where defendant had been sitting). Therefore, we find no error in the trial court's decision denying McCullough's motion to suppress by finding the inevitable-discovery doctrine applied in this matter. Accordingly, McCullough's second and third assignments of error are overruled.

{¶ 35} Judgment affirmed.

RINGLAND, P.J., and HENDRICKSON, J., concur.