[Cite as *State v. Babineau*, 2014-Ohio-3999.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2013-07-020 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N<br>9/15/2014 |
| - vs - | : | |
| | : | |
| JAMES A. BABINEAU, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. 13CRI00087


Jess C. Weade, Fayette County Prosecuting Attorney, John M. Scott, Jr., 110 East Court Street, Washington C.H., Ohio 43160, for plaintiff-appellee

Susan R. Wollscheid, P.O. Box 841, Washington, C.H., Ohio 43160, for defendant-appellant



**S. POWELL, J.**

{¶ 1} Defendant-appellant, James Babineau, appeals from the decision of the Fayette County Court of Common Pleas denying his motion to suppress. For the reasons outlined below, we affirm.

{¶ 2} A portion of the relevant facts of this case are identical to those found in *State v. McCullough*, 12th Dist. Fayette No. CA2013-07-021, 2014-Ohio-1696, a case in which we affirmed the trial court's decision overruling the motion to suppress filed by Babineau's co-

defendant, Anndrea McCullough. As this court stated in *McCullough*:

> On the afternoon of April 20, 2013, Detective Larry McGarvey of the Fayette County Sheriff's Office received word from a confidential informant that James Babineau would be traveling to Dayton that day in order to pick up heroin and bring it back to Fayette County. Detective McGarvey had used the confidential informant intermittently since 2001 and had never known the confidential informant to provide false information. Detective McGarvey was also familiar with Babineau as he had dealings with him in the past and knew he was involved in drug trafficking.
>
> After receiving this information, Detective McGarvey drove his unmarked vehicle to Babineau's residence where he observed an unidentified male loading a flat screen television into a PT Cruiser parked outside Babineau's mobile home. Not seeing anything overly suspicious, Detective McGarvey contacted the confidential informant who informed him that Babineau was going to sell the television at a local pawn shop in order to raise the money necessary to purchase the heroin in Dayton.
>
> Detective McGarvey then drove to the pawn shop where the sale was to take place. Once there, Detective McGarvey observed the same unidentified male, as well as Babineau and Babineau's mother, exit the pawn shop and get into the PT Cruiser. Detective McGarvey then watched as the vehicle drove to a nearby grocery store. While at the grocery store, Detective McGarvey saw Babineau make contact with several individuals in a blue vehicle. Detective McGarvey, however, was unable to identify any of those individuals within the vehicle. Detective McGarvey then watched as Babineau got into the PT Cruiser; McGarvey then followed the PT Cruiser as it made its way back to Babineau's mobile home.
>
> Once he arrived back at Babineau's residence, Detective McGarvey again contacted the confidential informant who told him that Babineau needed $100 more to make the trip to Dayton to purchase the heroin. Detective McGarvey then offered to give the confidential informant $50 to give to Babineau. As Detective McGarvey testified:
>
> I sat in the area for a little while, I ended up contacting my source again and asked if I could meet with them and give them 50.00 told them to make contact with Mr. Babineau and tell them they could come up with 50.00. I figured that way I could get them out of the trailer park and get to a place where I knew they would be and that I could actually observed from that point[.]
>
> After providing the confidential informant with the $50 to give to Babineau, the confidential informant contacted Detective

McGarvey and told him of where the exchange was going to take place. The confidential informant also told Detective McGarvey that immediately after the money was exchanged, Babineau would travel to Dayton to purchase the heroin.

Upon arriving at the exchange site, Detective McGarvey saw a blue Monte Carlo pull up with Babineau in the passenger seat. The vehicle was driven by a female later identified as McCullough. Detective McGarvey testified he knew McCullough was involved in drug trafficking with Babineau, but had never had any direct contact with her. Detective McGarvey, however, was not sure if the blue Monte Carlo was the same blue vehicle that he had seen outside the grocery store earlier that day.

Following this exchange, McCullough and Babineau drove the blue Monte Carlo onto State Route 35 heading towards Dayton. Detective McGarvey then followed McCullough and Babineau into downtown Dayton when he lost sight of their vehicle after it exited into an area known for high drug and criminal activity. Unable to locate the car, Detective McGarvey exited the downtown Dayton area and looped back around onto State Route 35. He then stopped his unmarked vehicle near the Bickett Road exit in hopes of spotting McCullough and Babineau as they traveled back towards Fayette County.

After some time, Detective McGarvey spotted McCullough and Babineau in the same blue Monte Carlo traveling towards Fayette County on State Route 35. After locating the vehicle, Detective McGarvey radioed ahead to Deputy Clint Sines and Deputy Bruce Stolsenberg who were stationed on State Route 35 conducting road patrol. Detective McGarvey then began following the blue Monte Carlo, which he testified was traveling at speeds ranging between 65 to 85 m.p.h.

Once McCullough and Babineau crossed into Fayette County, Deputy Stolsenberg clocked the blue Monte Carlo traveling at 67 m.p.h., two m.p.h. over the posted speed limit. Detective McGarvey then instructed Deputy Stolsenberg to initiate a traffic stop on the vehicle. As Detective McGarvey testified, "[t]hat with the information we had and we had a 67 let's get them pulled over."

After the car was stopped, McCullough and Babineau were removed from the vehicle and placed in separate police cruisers so that Deputy Sines could conduct a canine sniff of their vehicle. They were also read their *Miranda* rights. Although the canine alerted on the blue Monte Carlo, the subsequent search of the vehicle did not uncover any narcotics. Deputy Sines then conducted a canine sniff of the two police cruisers where McCullough and Babineau were sitting. The canine alerted on

both cruisers. The canine also conducted a sniff on a third police cruiser that was empty, but it did not alert on the vehicle. It is undisputed that no narcotics were found in the two police cruisers either before or after the canine sniff of the cruisers was conducted. Following the search of the vehicles, McCullough and Babineau were taken to the Fayette County Sheriff's Office so that a search warrant could be obtained for their persons.

Once they arrived at the sheriff's office, McCullough was taken to the jail, whereas Babineau was taken to the annex building. When asked why the two were separated, Detective McGarvey testified he did not want the two together and that McCullough was taken to the jail so that a female corrections officer could check her for weapons. As Detective McGarvey testified, "it becomes difficult with females when we don't have a female deputy available we can't do a proper pat down of them or any kind of search." In addition, Deputy Stolsenberg testified, "I am much more comfortable when I have the circumstances to take someone and to transport them into an office and let a female officer take care of a search [for weapons] if one is needed."

Upon arriving at the jail, McCullough, although merely being held under an investigative detention, was ordered to change out of her street clothes and into proper jail attire. As she was changing out of her clothes, McCullough produced two baggies containing heroin that she had concealed on her body. It is undisputed that Detective McGarvey was actively typing out a search warrant for both McCullough and Babineau when McCullough turned over the drugs. According to Deputy Stolsenberg, this occurred approximately 30 minutes after McCullough was taken to the jail.

*McCullough*, 2014-Ohio-1696 at ¶ 2-12.

{¶ 3} Once McCullough turned over the drugs, Babineau was placed under arrest for complicity to commit possession of heroin. Babineau was then taken from the annex building to the jail, where a search of his person uncovered a small baggie containing heroin.

{¶ 4} As a result of this discovery, Babineau was subsequently indicted on charges of complicity to commit possession of heroin, complicity to commit trafficking in heroin, possession of heroin and illegal conveyance of weapons or prohibited items onto grounds of a detention facility. Babineau then filed a motion to suppress, which, after holding a hearing on the matter, the trial court denied in its entirety. In so holding, the trial court found the initial

stop of the vehicle for which Babineau was a passenger was proper. The trial court also found that there was "nothing unreasonable or unconstitutional about the search incident to the lawful arrest of Mr. Babineau."

{¶ 5} After the trial court denied his motion to suppress, Babineau agreed to enter a plea of no contest to the above named charges. The trial court accepted Babineau's plea. The trial court then merged the charges for purposes of sentencing, and, following the state's election of charges, sentenced Babineau to a total aggregate mandatory six-year prison term. Babineau now appeals from the trial court's decision denying his motion to suppress, raising three assignments of error for review.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT PREJUDICIALLY ERRED BY FINDING DET. MCGARVEY HAD AN ARTICULATE REASONABLE SUSPICION TO CONDUCT A STOP OF THE VEHICLE THAT JAMES BABINEAU WAS RIDING.

{¶ 8} In his first assignment of error, Babineau argues the trial court erred by denying his motion to suppress by finding Detective McGarvey was justified in initially stopping the vehicle driven by McCullough in which Babineau was a passenger. This court, however, has already affirmed the trial court's decision regarding the initial stop of the vehicle. *See McCullough*, 2014-Ohio-1696 at ¶ 18-20. Specifically, as this court held in *McCullough*:

> In this case, the record indicates the officers observed McCullough traveling on State Route 35 at a speed of 67 m.p.h., two miles over the posted speed limit. Although de minimus, this traffic violation provided the officers with probable cause to initiate a traffic stop of McCullough's vehicle. As the officers had probable cause to stop McCullough for speeding, the initial stop of her vehicle was not unreasonable under the Fourth Amendment to the United States Constitution. This is true even though the officers may have had an ulterior motive for making the stop, such as their suspicion that McCullough and Babineau were engaged in more serious criminal drug activity.

(Internal citation omitted.) *Id.* at ¶ 20.

{¶ 9} Therefore, as this court has already determined that the initial stop of the vehicle driven by McCullough was proper, Babineau's first assignment of error is overruled.

{¶ 10} Assignment of Error No. 2:

{¶ 11} THE TRIAL COURT PREJUDICIALLY ERRED BY FINDING DET. MCGARVEY HAD PROBABLE CAUSE TO ARREST JAMES BABINEAU.

{¶ 12} In his second assignment of error, Babineau argues the trial court erred by denying his motion to suppress because he was "placed under arrest when the vehicle he was riding in was stopped." It is well-established, however, that the stop of a motor vehicle, even if for a limited purpose or a brief amount of time, merely constitutes a "seizure" of a person under the Fourth Amendment, not an "arrest." *State v. Layne*, 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 44, citing *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-558, 96 S.Ct. 3074 (1976). An "arrest" and a "seizure" of a person are entirely two different legal concepts. *State v. Ramsey*, 12th Dist. Warren No. 87-08-061, 1988 WL 102416, *3 (Sept. 30, 1988).

{¶ 13} As the record reveals, neither Babineau nor McCullough were placed under arrest until after they were transported to the sheriff's office and two baggies of heroin were discovered on McCullough's person. Although Babineau claims otherwise, the fact that he was read his *Miranda* rights, handcuffed, and placed into a police cruiser shortly after the initial stop does not automatically escalate his investigative detention into that of an arrest. *See State v. Wilson*, 3d Dist. Hancock No. 5-07-47, 2008-Ohio-2742, ¶ 22 (finding placement in a police cruiser, handcuffing, and *Mirandizing* of appellant did not elevate an investigatory detention into an arrest), citing *State v. Pickett*, 8th Dist. Cuyahoga No. 76295, 2000 WL 1060653 (Aug. 3, 2000); *State v. Mays*, 104 Ohio App.3d 241 (2d Dist.1995); and *State v. Broomfield*, 2d Dist. Clark No. 95-CA-0103, 1996 WL 537478 (Sept. 13, 1996).

{¶ 14} Furthermore, based on the totality of the circumstances here, we find the officers were justified in detaining Babineau until they could obtain a search warrant for his person. As noted above, Detective McGarvey received information from a confidential informant that Babineau was planning to travel to Dayton to pick up heroin and bring it back to Fayette County. Based upon this information, Detective McGarvey followed Babineau for a period of several hours before he met up with McCullough and drove to Dayton. Detective McGarvey then watched as the pair exited the freeway into an area known for high drug and criminal activity. Although he lost sight of their vehicle while in Dayton, Detective McGarvey later spotted McCullough and Babineau traveling back towards Fayette County from Dayton where they were pulled over for speeding.

{¶ 15} After the traffic stop was initiated, a canine sniff was then conducted, wherein the canine alerted to the presence of drugs in the Monte Carlo, as well as in the two police cruisers in which McCullough and Babineau were seated. As we stated in *McCullough*:

> Once the canine alerted on the cruisers in which McCullough and Babineau were seated, the officers were provided with even further justification to support their reasonable and articulable suspicion that criminal activity was afoot. These facts also serve as a pertinent factor in the officers' probable cause inquiry in support of the search warrant for their persons.

*Id.*, 2014-Ohio-1696 at 22. In fact, as this court explicitly found in reviewing this matter previously, "the facts and circumstances of this case provides more than enough evidence to support a probable cause finding to issue a search warrant." *Id.* at ¶ 33. Babineau's second assignment of error is therefore overruled.

{¶ 16} Assignment of Error No. 3:

{¶ 17} THE TRIAL COURT PREJUDICIALLY ERRED BY OVERRULING JAMES BABINEAU'S MOTION TO SUPPRESS BASED UPON A FINDING THAT HE LACKED STANDING TO CHALLENGE THE SEARCH OF ANNDREA MCCULLOUGH WHEN THAT

WAS NOT THE BASIS FOR HIS MOTION.

{¶ 18} In his third assignment of error, Babineau argues the trial court erred by denying his motion to suppress by finding he lacked standing to challenge the search of McCullough's person. Specifically, Babineau argues the trial court "treated the motion as it were based solely upon the illegal search of [McCullough] at the jail and dismissed it for lack of standing." However, after a simple review of the record, we find that is simply not the case.

{¶ 19} In this case, after initially overruling the state's objection arguing Babineau had no standing to challenge the search of McCullough after she was transported to jail, the trial court stated:

> Counsel I am going to reverse my ruling I think on the motion on the objection lodged by the State was that Mr. Babineau has no standing to challenge the search legal or illegal of Ms. McCullough and I sustain that motion. This defendant has not (sic) standing to do that what effect any evidence that might be suppressed has in Mr. Babineau's case I guess I don't have to decide that at this point. But as far as standing he has no standing to object to her search.[1]

Thereafter, in reaching its decision denying Babineau's motion to suppress, the trial court explicitly stated that it overruled Babineau's "motion in each and every particular." Therefore, Babineau's claim that the trial court denied his motion to suppress based solely on its finding he lacked standing to challenge the search of McCullough's person is simply not supported by the record. Accordingly, Babineau's third assignment of error is overruled.

{¶ 20} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.

---

1. Although not at issue here, we note that the trial court correctly determined Babineau lacked standing to challenge the search of McCullough's person. "The Fourth Amendment right to be free from unreasonable searches and seizures cannot be vicariously asserted." *State v. Smith*, 117 Ohio App.3d 656, 667 (8th Dist.1997), quoting *State v. Steele*, 2 Ohio App.3d 105, 107 (8th Dist.1981).