JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Sheldon Seals appeals his convictions for drug possession, drug trafficking, and possession of criminal tools. He assigns the following four errors for our review:
 "I. The trial court erred by overruling the motion to dismiss on grounds of double jeopardy because bad faith should be presumed when discovery is delayed and when the prosecution witnesses fail to appear and fail to produce evidence on four consecutive court dates."
 "II. Defendant suffered prejudice because the prosecution never produced evidence regarding an inventory search despite discovery requests, a motion to compel, and a motion to suppress."
 {¶ 2} "III. The trial court erred as a matter of law by overruling themotion to suppress the evidence obtained through an unconstitutionalsearch of a closed container."
 "IV. The trial court erred in overruling defendant's motion to dismiss on grounds of violating his statutory right to a speedy trial."
 {¶ 3} Having reviewed the record and pertinent law, we vacate Seals' convictions. The apposite facts follow.
 {¶ 4} On January 23, 2006, Seals was indicted on one count of drug possession in an amount exceeding five grams but less than ten grams, one count of drug trafficking in an amount exceeding five grams but less than ten grams, and one count of possession of criminal tools in the form of money, an automobile, and a metal can. *Page 2 
 {¶ 5} Seals filed a motion to suppress the evidence recovered as a result of the officer opening a closed container found in his trunk. The container contained twenty-four rocks of cocaine. The trial court conducted a hearing on the motion.
 Evidence at the Suppression Hearing {¶ 6} Officer Florjanic testified that he observed Seals' co-defendant, Rick Westwood, gesture to Seals' car and then enter the car on the passenger side. The officers were suspicious and ran a license check on the vehicle. The check indicated that Seals had a suspended license.
 {¶ 7} As the officers approached the men, they observed Seals walking from the area of his trunk to the driver's side of the car. Officer Florjanic approached Seals and after confirming he did not have a valid driver's license, asked Seals to exit the car for safety reasons. As he did so, his partner observed Westwood making movements under his seat. His partner drew his weapon and ordered Westwood out of the car. A rock of cocaine was found underneath the passenger's seat. At that time, the officers also noticed a small rock of crack cocaine on the driver's seat.
 {¶ 8} After arresting the men, Officer Florjanic conducted an inventory search of the vehicle. He discovered an aerosol can in the trunk. He was aware *Page 3 
that drug couriers frequently carry drugs in a false bottom in the can. He shook the can; it felt as if a bean bag was inside. He unscrewed the bottom and found twenty-four individually wrapped rocks of cocaine.
 {¶ 9} The trial court denied Seals' motion to suppress the evidence after concluding on the record that the evidence was discovered pursuant to a valid inventory search. Seals then entered a no contest plea to all the counts. The trial court sentenced him to one year of community control.
 Motion to Suppress {¶ 10} We will address Seals' third assigned error first because it is dispositive of this appeal. Seals argues the officer opening the can violated his Fourth Amendment Right against unreasonable search and seizures. The State contends the can was opened pursuant to a valid inventory search; therefore, the officer's conduct was constitutional.
 {¶ 11} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses.[1] On review, an appellate court must accept the trial court's findings *Page 4 
of fact if those findings are supported by competent, credible evidence.[2] After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met.[3]
 {¶ 12} Seals does not dispute the stop or his removal from the car. He only disputes the legality of the officer opening the canister. He contends the opening of the canister violated his Fourth Amendment rights because there was no evidence presented that the closed container was opened pursuant to standardized police department policy regarding inventory searches. We agree. *Page 5 
 {¶ 13} "Inventory searches are a `well-defined exception to the warrant requirement of the Fourth Amendment. "[4] An inventory search is considered an administrative function of the police that serves three purposes: (1) it protects an individual's property while it is in police custody; (2) it protects the police against frivolous claims of lost, stolen or vandalized property; and (3) it protects the police from weapons.[5]
 {¶ 14} In State v. Hathman, [6] the Ohio Supreme Court analyzed and followed various United States Supreme Court decisions regarding inventory searches and held:
 "1. To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine. (South Dakota v. Opperman (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed. 2d 1000; Colorado v. Bertine (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed. 2d 739; and Florida v. Wells (1990), 495 U.S. 1, 110 S.Ct. 1632, 109 L Ed.2d 1, followed.)
 "2. If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part *Page 6 of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers. (Colorado v. Bertine (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed. 2d 739; and Florida v. Wells (1990), 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed. 2d 1, followed.)"[7]
 {¶ 15} In Hathman, officers arrested Hathman and conducted an inventory search of his vehicle. During the inventory search, an officer opened and searched the vehicle's trunk and discovered a plastic bag. The bag contained several smaller bags and a pill bottle. These containers were then opened and found to contain contraband. The officer testified his department's standard policy permitted him to inventory all "accessible" areas of the car. *Page 7 
 {¶ 16} The Supreme Court held that the search of the trunk itself was reasonable because the trunk is part of an automobile that is normally included in the scope of an inventory search, and that testimony established that it was standard procedure to search such areas. However, the Court concluded that the evidence discovered in the containers should be suppressed because, in accordance withBertine and Wells, supra," the existence of a reasonable policy or procedure governing inventory searches in general is insufficient to justify the opening of closed containers encountered" during the inventory search. Rather, some articulated policy must also exist which regulates the opening of containers found during the authorized inventory search."[8]
 {¶ 17} The facts in this case are nearly identical. Officer Florjanic testified that after the men were arrested, he conducted an inventory search of the vehicle because it was to be towed. When questioned regarding the standard police policy for inventorying the vehicle, Florjanic stated:
 "Officer: We inventory the whole car, inside and out, damage, whatever is inside, whatever is in the trunk if we have access to it. *Page 8 
 "State: Why do you inventory things inside including the trunk of a vehicle?
 "Officer: Why?
 "State: Yes.
 "Officer: Because we are ordered to, first of all, and to protect any property they have in the vehicle."[9]
 {¶ 18} This was a general description of the police department's policy regarding inventory searches. Based on this testimony, we conclude the officer was permitted to search the trunk as part of the inventory because he had access to it. The Court in Hathman found under identical language that the search of the trunk was appropriate.
 {¶ 19} The officer went on to state, however, that the object of his search was not to inventory, but to seek out contraband and weapons.
 "State: Can you describe to the Court how you inventoried the vehicle and what you found? *Page 9 
 "Officer: I go through the outside of the vehicle first and detail any damage that is done to the vehicle. I look inside the driver's, passenger's, and rear seats, see if it has a radio, normal things like that. And whatever personal effects they have in the vehicle I search through that for any weapons or any contraband that they might have."[10]
 {¶ 20} On cross-examination, he further stated:
 "Counsel: So this is an inventory search. You're done looking for evidence, right?
 "Officer: I'm inventorying the car for further evidence and for incidents to arrest.
 "Counsel: You are thinking maybe if we go in the trunk maybe we can find more evidence against Mr. Seals?
 "Officer: Correct."[11]
 {¶ 21} Defense counsel then questioned the officer about his intentions upon finding the aerosol can in the trunk.
 Counsel: You said, I have seen these aerosol cans before. They are used to hide contraband?
 "Officer: Yes. *Page 10 
 "Court: There is a suspicion there is more contraband in the aerosol can?
 "Officer: Correct.
 "Counsel: You are not doing an inventory search at this point?
 "Officer: In the process in doing it.
 "* * *
 "Counsel: This is not the first time that you found contraband in a can like that?
 "Officer: Correct.
 "Counsel: When you unscrewed it you were thinking, hey, maybe this is another one of those cans?
 "Officer: I had a pretty good idea what was in it."[12]
 {¶ 22} Defense counsel then explicitly asked the officer what was the department's policy on opening closed containers.
 "Counsel: Okay. Now, what is the Cleveland policy on containers found in trunks; do you know?
 "Officer: Meaning what? *Page 11 
 "Counsel: Meaning, you do an inventory. You say that you don't have a choice but to inventory the vehicle?
 "Officer: Right.
 "Counsel: You find a box with a lock on it, like a padlock on it. What are you supposed to do?
 "Officer: If it is locked, this is not access to it.
 "Counsel: Okay.
 "Officer: We log it, and it stays with the vehicle.
 "Counsel: So if there is some kind of container in there and it has some sort of false bottom or hidden door, if you can get it open you will open it. If you can't get it open, you move on to something else?
 "Officer: If we suspect there might be something like that, we might try. But other than that-
 "Counsel: You will not normally go into a container unless you suspected there might be something, some kind of evidence in there?
 "Officer: I guess, yeah."[13] *Page 12 
 {¶ 23} On redirect, the State attempted to minimize the officer's testimony by prompting the officer to state he not only looked in the can for contraband, but also for anything of value.
 {¶ 24} Under these circumstances, we cannot conclude the officer testified to a specific policy regarding the opening of closed containers. He stated as long as he had access he could search items. However, the Ohio Supreme Court in Hathman held that a general policy that accessible areas could be searched during an inventory did not indicate a specific policy as to closed containers, and, therefore found the evidence should be suppressed.
 {¶ 25} The officer in the instant case also gave vague and sometimes conflicting testimony regarding the purpose of opening closed containers. He stated he opened closed containers in order to determine if contraband was in them, but also stated he did it to look for valuables.
 {¶ 26} Moreover, defense counsel requested via a discovery motion the written police department policy regarding inventory searches; the State failed to comply with the request, causing defense counsel to file a motion to compel. The State never produced the policy. This makes the situation even more disconcerting. We are aware that an officer need not present the written policy in order to present evidence of the department's policy as to inventory searches.[14] *Page 13 
However, when defense counsel specifically requests the policy in a discovery motion, surely the State has a duty to produce the policy. Failure to do so eviscerates defense counsel's attempts to ascertain what the policy regarding inventorying closed containers is beyond the officer's vague testimony stating the policy allows him to open "accessible containers."
 {¶ 27} Further, even if we conclude the officer gave sufficient testimony regarding the standard police policy, he clearly opened the container because he believed contraband was inside. He stated he was aware contraband was often hidden in aerosol cans; therefore, he had a suspicion contraband was in the can.
 {¶ 28} An inventory search "which is conducted with an investigatory intent, and which is not conducted in the manner of an inventory search, does not constitute an `inventory search' and may not be used as a pretext to conduct a warrantless evidentiary search."[15] It appears that is exactly what Officer Florjanic did. He used the inventory search as a pretext for searching for more evidence. If he suspected evidence was contained in the can, he should have obtained a search warrant to open the can. The vehicle was not at risk of being driven away because it was to be towed to a secured police parking lot. *Page 14 
Accordingly, we sustain Seals' third assigned error. Seals' remaining assigned errors are moot.[16]
Convictions vacated.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J. and MELODY J. STEWART, J., CONCUR
[1] State v. Mills (1992), 62 Ohio St.3d 357, 366.
[2] State v. Retherford (1994), 93 Ohio App.3d 586, 592.
[3] Id.
[4] State v. Mesa, 87 Ohio St.3d 105, 108, 1999-Ohio-253, quotingColorado v. Bertine (1987), 479 U.S. 367, 371, 93 L.E.2d 739,107 S.Ct. 738.
[5] Id. at 109.
[6] (1992), 65 Ohio St.3d 403.
[7] Id. at paragraphs one and two of the syllabus.
[8] Id. at 408.
[9] Tr. 23-24.
[10] Tr. 24.
[11] Tr. 30-31.
[12] Tr. 33-34.
[13] Tr. 34-35.
[14] State v. Semenchuk (1997), 122 Ohio App.3d 30.
[15] State v. Caponi (1984), 12 Ohio St.3d 302, 303.
[16] App. R. 12(A)(1)(c). *Page 1