[Cite as *State v. Banks-Harvey*, 2016-Ohio-2894.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2015-08-073 |
| | : | O P I N I O N |
| - vs - | | 5/9/2016 |
| | : | |
| JAMIE BANKS-HARVEY, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 15 CR 30660

David P. Fornshell, Warren County Prosecuting Attorney, Kathryn Horvath, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Thomas W. Kidd, Jr., 8913 Cincinnati-Dayton Road, West Chester, Ohio 45069, for defendant-appellant

**HENDRICKSON, J.**

{¶ 1} Appellant, Jamie Banks-Harvey, appeals from a decision of the Warren County Court of Common Pleas denying her motion to suppress. For the reasons stated below, we affirm the decision of the trial court.

{¶ 2} On October 21, 2014, appellant was operating a motor vehicle that was stopped for a traffic violation. During the traffic stop, drugs and drug paraphernalia were

found in appellant's purse. Subsequently, appellant was indicted for possession of heroin and possession of cocaine in violation of R.C. 2925.11(A), possession of drug paraphernalia in violation of R.C. 2925.14(A), and possession of drug abuse instruments in violation of R.C. 2925.12(A).

{¶ 3} In May 2015, appellant moved to suppress the evidence found in her purse. An evidentiary hearing was held shortly thereafter. At the hearing, the state presented the testimony of Ohio State Highway Patrol Trooper Matthew Keener and an audio recording of the traffic stop. The state also presented a video recording of the stop taken by the camera in Trooper Keener's police cruiser, but, due to the positioning of the vehicles, the video did not show appellant's automobile.

{¶ 4} Trooper Keener testified that he initiated a traffic stop on an automobile he observed to be traveling 53 m.p.h. in a 35 m.p.h. zone. Appellant was driving the vehicle and appellant's boyfriend and appellant's friend, Ms. Holcomb, were passengers. Appellant did not have a driver's license and instead gave Trooper Keener a Ohio identification card that she removed from her purse. After discovering appellant did not have a driver's license, Trooper Keener removed appellant and placed her in the back of his police cruiser.

{¶ 5} While appellant was in the back of the police cruiser, Trooper Keener ran appellant's information through his computer and discovered that her driver's license was suspended and that she had a felony arrest warrant for possession of heroin from neighboring Montgomery County. Trooper Keener contacted highway patrol dispatch to confirm the warrant. While waiting for confirmation of the warrant, Trooper Keener returned to the vehicle and spoke with appellant's boyfriend and Ms. Holcomb.

{¶ 6} At the hearing, Trooper Keener testified that while he was speaking with Ms. Holcomb and appellant's boyfriend, he observed a gel capsule, which he immediately believed to contain heroin, on the vehicle's floorboard. Trooper Keener then returned to his

cruiser and received confirmation of appellant's Montgomery County arrest warrant and that Ms. Holcomb also had an outstanding arrest warrant. During this time, Highway Patrol Trooper O'Neal arrived at the scene. Trooper Keener handcuffed appellant and Ms. Holcomb and placed them in the back of his police cruiser to await transfer to Montgomery County where they would be taken to jail.

{¶ 7} Trooper Keener explained that after he arrested appellant, he returned to the vehicle, removed her purse, and searched it. Inside he found heroin, cocaine, needles, and a glass pipe. After the drugs and drug paraphernalia were discovered, Trooper O'Neal informed Trooper Keener that he observed a gel capsule on the floor of the automobile.

{¶ 8} On June 4, 2015, the trial court issued a written decision denying appellant's motion to suppress. In denying the motion, the trial court dismissed several of the state's theories of admissibility, including that the search of the purse was valid through the automobile exception. The trial court found Trooper Keener did not have probable cause to search the vehicle and the purse because his testimony that he observed the gel capsule in the vehicle before searching the purse was not credible. However, the court found that the search was valid under the inevitable discovery doctrine through the automobile exception. The court reasoned that the drugs and drug paraphernalia in the purse would have been inevitably discovered under the automobile exception because at the same time the purse was being searched, Trooper O'Neal observed the gel capsule. Accordingly, the trial court denied appellant's motion to suppress.

{¶ 9} Thereafter, appellant pled no contest to all counts contained in the indictment. She was sentenced to three years of community control. Appellant now appeals, raising a single assignment of error:

{¶ 10} THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE THAT WAS SEIZED FROM HER

PURSE IN VIOLATION OF [HER] RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶ 11} Appellant argues the trial court erred in finding that the drugs in her purse would have been inevitably discovered under the automobile exception. The state disagrees and argues the drugs are admissible because (1) the drugs would have been inevitably discovered under the automobile exception, (2) the search was a valid inventory search, and (3) the drugs would have been inevitably discovered during an inventory search at the Montgomery County Jail.

## I. Standard of Review

{¶ 12} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8; *State v. Jones*, 12th Dist. Brown No. CA2015-05-014, 2016-Ohio-67, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *Jones* at ¶ 8. In turn, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Id.*

## II. Fourth Amendment

{¶ 13} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops. *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. A warrantless search is per se unreasonable unless certain "specifically established and well delineated exceptions" exist. *City of Xenia v. Wallace*, 37 Ohio St.3d

216, 218 (1988), quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 454-455, 91 S.Ct. 2022 (1971). Once a warrantless search is established, the state bears the burden of proof, including the burden of going forward with evidence, to show the validity of the search. *Id.* at paragraph two of the syllabus. The state's burden of proof that the search is subject to an exception to the warrant requirement is by a preponderance of the evidence. *City of Athens v. Wolf*, 38 Ohio St.2d 237, 241 (1974).

{¶ 14} If an individual's right against unreasonable searches and seizures is violated, the evidence obtained as a result of the violation is subject to exclusion. *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405 (1984). While the Fourth Amendment does not contain an express mandate that evidence seized as a result of an illegal search be suppressed, suppression is inherent in the amendment's language. *Id.*, citing *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613 (1974). "The [exclusionary] rule thus operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *Id.*, quoting *Calandra* at 348.

### III. Inevitable Discovery under Automobile Exception

{¶ 15} Under the automobile exception to the warrant requirement, once police officers obtain probable cause to believe a vehicle contains contraband, the officers may search the vehicle. *State v. Raphael*, 12th Dist. Warren Nos. CA2014-11-138 and CA2014-11-139, 2015-Ohio-3179, ¶ 23. The automobile search may extend to the occupant's belongings in the vehicle, including a purse. *Wyoming v. Houghton*, 526 U.S. 295 302, 119 S.Ct. 1297 (1999). In the present case, the trial court reasoned that while the troopers did not have probable cause to search the vehicle before the purse was removed, the drugs would have been inevitably discovered under the automobile exception. The court reasoned Trooper O'Neal's observation of the gel capsule inside the vehicle gave rise to probable cause to

search the vehicle and the purse.

{¶ 16} Appellant argues the trial court erred in finding that the inevitable discovery doctrine permitted the admission of the drugs and drug paraphernalia. Specifically, appellant maintains the state did not set forth any evidence that Trooper O'Neal was pursuing an alternative line of investigation prior to the search of the purse.

{¶ 17} Under the inevitable discovery doctrine, evidence that is illegally obtained is properly admitted "once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." *State v. Perkins*, 18 Ohio St.3d 193 (1985), syllabus; *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501 (1984). The prosecution must show within a reasonable probability that police officials would have discovered the derivative evidence apart from the unlawful conduct. *Perkins* at 196.

{¶ 18} There are two primary means by which the state can establish the inevitable discovery of the unconstitutionally seized item: (1) prior to the misconduct, authorities were actively pursuing an alternate line of investigation that would have resulted in discovery of the evidence; or (2) authorities would have subsequently discovered the evidence through a standardized procedure or established routine. *State v. McCollough*, 12th Dist. Fayette No. CA2013-07-021, 2014-Ohio-1696, ¶ 29. Under the "prior to misconduct" requirement, inevitable discovery has been restricted to situations where alternative investigatory procedures *were already underway* or *completed*. *State v. Bradford*, 4th Dist. Adams No. 09CA880, 2010-Ohio-1784, ¶ 56. As courts have recognized, to hold otherwise, would permit the doctrine to apply even if police merely "could have discovered" the evidence, rather than if they "would have discovered" the evidence. *State v. Porter*, 178 Ohio App.3d 304, 2008-Ohio-4627, ¶ 43 (2d Dist.).

{¶ 19} Regarding the inevitable discovery doctrine, the trial court stated: "At the time of the search, [Trooper O'Neal] has observed the suspicious gel cap and has shared this

information with Trooper Keener. These observations, when coupled with the suspicious behavior of the occupants of the vehicle, provide probable cause for a search of the motor vehicle under the 'automobile exception' outlined above." The trial court concluded that because the troopers "had observed contraband and conducted a lawful search of the vehicle based on this probable cause, the search of Defendant's purse was within the scope of that search and the drugs * * * would have been inevitably discovered."

{¶ 20} After a careful review of the record, we find that the state failed to establish that the inevitable discovery doctrine permits admission of the evidence in appellant's purse. The state did not set forth *any* evidence that there was an alternative line of investigation underway *prior* to Trooper Keener's removal and search of the purse. At the suppression hearing, the state offered Trooper Keener's testimony and a video and audio recording of the stop. Trooper O'Neal was not called as a witness during the hearing. While Trooper Keener testified regarding the details of his own investigation, there was no testimony as to when Trooper O'Neal began his investigation that led to the discovery of the gel capsule inside the vehicle. Further, due to the positioning of Trooper Keener's police cruiser, the video of the traffic stop does not capture the vehicle appellant was driving and does not show when Trooper O'Neal began his investigation which led to the discovery of the gel capsule. Moreover, the audio recording of the traffic stop only establishes that *after* Trooper Keener removed appellant's purse, searched the purse, and found the syringes and drugs, did Trooper O'Neal inform Trooper Keener about the gel capsule.

{¶ 21} Based on this limited evidence, the state did not establish that Trooper O'Neal's investigation was *already underway* at the time Trooper Keener removed and searched the purse. *See State v. Parrish*, 10th Dist. Franklin No. 01AP-832, 2002-Ohio-3275, ¶ 39 (neighbor's tip insufficient under inevitable discovery because received after illegal search); *State v. Keith*, 178 Ohio App.3d 46, 2008-Ohio-4326, ¶ 14 (2d Dist.). Due to Trooper

O'Neal's failure to testify at the hearing and the limited video recording, there is no evidence when Trooper O'Neal began his investigation of the vehicle. Therefore, the state failed to meet its burden of proof that the evidence obtained during the warrantless search of appellant's purse would have been inevitably discovered under the automobile exception. Consequently, the trial court erred in finding that the evidence was admissible under the inevitable discovery doctrine pursuant to the automobile exception.

### IV. Inventory Search

{¶ 22} The state argues that even if the drugs and paraphernalia would not have been inevitably discovered under the automobile exception, the search was permissible under the inventory search exception.

{¶ 23} The search of an arrestee and his or her personal effects incident to incarceration is reasonable under the Fourth Amendment in conjunction with the inventory search exception to the warrant requirement. *South Dakota v. Opperman*, 428 U.S. 364, 372, 96 S.Ct. 3092 (1976); *Illinois v. Lafayette*, 462 U.S. 640, 648, 103 S.Ct. 2605 (1983). The purpose of an inventory search is to (1) protect an individual's property while it is in police custody, (2) protect police against claims of lost, stolen or vandalized property, and (3) protect police from dangerous instrumentalities. *Opperman* at 369.

{¶ 24} Inventory searches are administrative caretaking functions unrelated to criminal investigations. *State v. Mesa*, 87 Ohio St.3d 105, 109 (1999), citing *Opperman* at 370, fn 5. Therefore, the policies underlying the Fourth Amendment warrant requirement, including the standard of probable cause, are not implicated. *Id.* *See also Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738 (1987). The validity of an inventory search is judged by the Fourth Amendment's standard of reasonableness. *Mesa* at 108-09, citing *Opperman* and *Bertine.* Inventory searches are permitted if the search was "conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine." *State v.*

*Hathman*, 65 Ohio St.3d 403, 405 (1992), citing *Opperman*; *Bertine*; and *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632 (1990).

{¶ 25} In *Lafayette*, the Supreme Court found that it is reasonable under the Fourth Amendment "for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures." *Id.* at 648. The Court reasoned that the inventory search of the arrestee's shoulder bag at the station-house, prior to booking and jailing the arrestee, was reasonable because the search protects the suspect's property, deters false claims of theft against the police, insures security, and aids in identifying the suspect. *Id.* at 646-47.

{¶ 26} Later, the Supreme Court addressed the inventory search exception in a different context and emphasized that the principles underlying the exception should guide courts in determining whether a search purportedly falling under the exception is reasonable. *Bertine* at 372-373. The high court clarified that its *Lafayette* decision "did not suggest that the station-house setting of the inventory search was critical" to its legitimacy. *Id.* at 373. Rather, the focus is upon whether the search advanced the interests of safeguarding property, limiting liability for lost or stolen property, and protecting police from danger. *Id.*

{¶ 27} In the case at bar, Trooper Keener testified that after he arrested and detained appellant, he searched her purse pursuant to Highway Patrol standardized procedures. Trooper Keener arrested appellant on a Montgomery County warrant and detained her until she could be extradited to Montgomery County for incarceration. Trooper Keener explained that it is the Highway Patrol's standard written policy that an arrested person's belongings accompany that person to jail. When a female suspect is arrested, her purse accompanies her to jail. He also stated that it is the standard policy that an individual's belongings are searched before placing the items into the police cruiser. Trooper Keener explained that belongings are searched to protect the safety of the officer and also to discover evidence of a

crime. He explained appellant would be subject to a conveyance charge if she brought contraband into the Montgomery County Jail.

{¶ 28} We find that Trooper Keener's search of appellant's purse after appellant was arrested and incident to appellant's incarceration was a valid inventory search and reasonable under the Fourth Amendment. Trooper Keener's testimony clearly provides that there was a standardized Highway Patrol policy regulating the removal and search of a person's belongings incident to incarceration, and the record indicates that Trooper Keener's conduct conformed to this policy. While the state did not admit the actual written Highway Patrol policy into evidence, Trooper Keener's unrebutted testimony articulating the existence of the standardized inventory search procedures of the Highway Patrol was sufficient. *State v. Zukas*, 11th Dist. Portage No. 2003-P-0005, 2004-Ohio-2792, ¶ 29. *See also State v. Hullum*, 8th Dist. Cuyahoga No. 98796, 2013-Ohio-1448, ¶ 19; *State v. Flynn*, 3d Dist. Seneca No. 13-06-11, 2006-Ohio-6683, ¶ 17.

{¶ 29} The governmental interests justifying inventory searches were also satisfied by the inventory search in this case. Trooper Keener's search of appellant's purse before placing it in the back of his police cruiser with two arrested suspects ensured that no weapons were concealed in the purse and protected Trooper Keener from dangerous instrumentalities. The search also safeguarded appellant's property while in police custody and insured against claims of lost, stolen, or vandalized property.

{¶ 30} Among the legitimate reasons provided to justify the search, Trooper Keener also stated that he conducted the search to discover evidence of a crime. We acknowledge that an inventory search "must not be a ruse for general rummaging in order to discover incriminating evidence" and must be conducted in "good faith." *Wells*, 495 U.S. at 4; *Hathman*, 65 Ohio St.3d at 405. However, we do not accept the proposition that one statement from an officer that he was searching for contraband, as well as conducting an

inventory search, demonstrates the search was conducted in bad faith or was a pretext for a warrantless evidentiary search. As stated in *Bertine*, there is no showing that Trooper Keener, who was following the standardized procedures of the Highway Patrol, "acted in bad faith or for the *sole* purpose of investigation." (Emphasis added.) *Bertine* at 372. *Compare State v. Rose*, 118 Ohio App.3d 864, 869 (8th Dist.1997) (valid inventory search when purpose was to conduct an inventory and discover contraband) *with State v. Seals*, 8th Dist. Cuyahoga No. 90561, 2008-Ohio-5117, ¶ 27-28 (inventory search was pretextual when repeated testimony that opened container to search for contraband). Instead, the evidence demonstrates Trooper Keener acted in good faith and conducted a lawful inventory search of appellant's purse pursuant to the Highway Patrol's reasonable standardized inventory search procedures.

{¶ 31} Lastly, Trooper Keener's retrieval of the purse from the automobile so that appellant's personal belongings would be returned to her and accompany her to jail was reasonable. At the time appellant was arrested and detained in the back of Trooper Keener's police cruiser, her purse remained in the automobile with her boyfriend. It was reasonable for Trooper Keener to believe that he should secure appellant's personal property once she was under arrest and ensure that the property remained with appellant. If Trooper Keener failed to secure appellant's property and the boyfriend did not return the purse to appellant or the boyfriend went through its contents and removed something, Highway Patrol might have been liable for the loss. As noted by United States Supreme Court Justice Blackmun while writing in dissent:

> A person arrested in a public place is likely to have various kinds of property with him: items inside his clothing, a briefcase or suitcase, packages, or a vehicle. In such instances the police cannot very well leave the property on the sidewalk or street while they go to get a warrant. The items may be stolen by a passer-by or removed by the suspect's confederates. Rather than requiring the police to "post a guard" over such property, I

> think it is surely reasonable for the police to take the items along
> to the station with the arrested person.

*United States v. Chadwick*, 433 U.S. 1, 19, 97 S.Ct. 2476 (Blackmun, J., dissenting).

**{¶ 32}** We are reluctant to impose a legal burden on police officers to decide who is worthy of entrustment of an arrestee's personal effects on the scene. *Compare State v. Sincell*, 2d Dist. Montgomery No. 19073, 2002 WL 538928, *3 (Apr. 12, 2002). Therefore, we find Trooper Keener's retrieval of appellant's purse so that her personal belongings may accompany her to jail was reasonable. However, we note that had appellant affirmatively requested Trooper Keener to leave the purse in the vehicle or on the scene, we may have been compelled to reach a different result. Nevertheless, under the particular facts of this case, where appellant was arrested and awaiting transport to jail, we find that the removal of her purse from the automobile and the subsequent search of the purse pursuant to the standardized procedures of the Highway Patrol was a valid inventory search and reasonable under the Fourth Amendment.

**{¶ 33}** Consequently, the drugs and paraphernalia were admissible as the fruit of a valid administrative inventory search conducted in accordance with reasonable standardized procedures employed by the Highway Patrol. Because the search was a valid inventory search, we find it unnecessary to address the state's remaining argument, that the evidence was admissible because it would have been inevitably discovered during an inventory search at the Montgomery County Jail.

### V. Conclusion

**{¶ 34}** Accordingly, the trial court did not err in denying appellant's motion to suppress. The trial court's reliance on inevitable discovery and the automobile exception in denying the motion to suppress is immaterial because the evidence established the drugs were discovered as part of a valid routine inventory search. *See State v. Hamrick*, 12th Dist.

Madison No. CA2011-01-002, 2011-Ohio-5357, ¶ 38 ("we must affirm a trial court's judgment that achieves the right result for the wrong reason, because such an error is not considered prejudicial"). Appellant's sole assignment of error is overruled.

{¶ 35} Judgment affirmed.

RINGLAND, J. concurs.

M. POWELL, P.J., dissents.

**M. POWELL, P.J., dissenting.**

{¶ 36} I disagree with the majority's determination that the search of appellant's purse was constitutionally permissible pursuant to the purported policy of the Highway Patrol to retrieve and search an arrestee's belongings incident to incarceration ("Highway Patrol Policy"). My concerns are two-fold. First, the trial court made no factual finding that Trooper Keener's testimony concerning the Highway Patrol Policy was credible. Such a factual finding is crucial if we are to rely upon the Highway Patrol Policy to uphold the search and observe our responsibility to defer to a trial court's findings of fact in reviewing a ruling upon a motion to suppress. Second, the Highway Patrol Policy, as described by Trooper Keener, permits a search in violation of the Fourth Amendment pursuant to *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710 (2009).

## I. Trooper Keener's Testimony Regarding the Highway Patrol Policy

{¶ 37} The record provides no basis upon which we may approve the warrantless search of appellant's purse pursuant to the Highway Patrol Policy. The majority correctly notes at the outset of its discussion that an appellate court, when considering a trial court's ruling upon a motion to suppress, "is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence." Although the trial court's opinion made

specific mention of Trooper Keener's testimony regarding the Highway Patrol Policy, there is no indication that the trial court gave credit to this testimony and found that the testimony established the existence and provisions of the policy.

{¶ 38} The trial court did not expressly credit Trooper Keener's testimony concerning the Highway Patrol Policy and find the Highway Patrol had adopted such a policy. Significantly, the trial court's sole reference to the Highway Patrol Policy discounts Trooper Keener's testimony as follows: "The policy of the Ohio State Patrol is to transport the individual with their property, but no written policy was offered as evidence at the hearing." (Emphasis added.)

{¶ 39} I agree with the majority that competent, credible testimony alone may suffice to establish an inventory policy. However, if the trial court had found that Trooper Keener's testimony concerning the Highway Patrol Policy was, standing alone, sufficient to establish the policy, it would not have found the failure of the state to offer the written policy itself worthy of note.

{¶ 40} Additionally, the trial court did not uphold the search on the basis of the Highway Patrol Policy. Because the trial court did not uphold the search on the basis of the Highway Patrol Policy, no inference arises that it credited this testimony.

{¶ 41} Finally, the trial court specifically found Trooper Keener's testimony on a closely related issue, his discovery of the gel cap on the vehicle floorboard as establishing probable cause for his search of the purse, not credible.

{¶ 42} Based upon this record, there is no affirmative finding of fact to which we may defer that there was, indeed, a Highway Patrol Policy as claimed by Trooper Keener. Rather than deferring to the trial court's findings of fact as to the existence and content of the Highway Patrol Policy, the majority makes its own finding of fact that Trooper Keener's testimony was reliable. This violates the basic precept that a court of appeals, in reviewing a

trial court's ruling upon a motion to suppress, is not a fact finder and should not make first instance credibility determinations.

{¶ 43} I have no qualms with a court of appeals finding that a trial court "got it right for the wrong reason" as the majority has ruled here. However, that presupposes there is a credible evidentiary basis supporting the alternative ground of affirmance. For instance, if there was some indication that the trial court had found Trooper Keener's testimony as to the Highway Patrol Policy reliable or if authenticated documentation of the policy had been admitted into evidence, there would be a credible evidentiary basis supporting the majority's finding that the search of the purse was pursuant to the Highway Patrol Policy. But here, the majority's alternative ground for affirmance is based entirely upon moral evidence (i.e., Trooper Keener's testimony) that was not relied upon in any respect by the trial court. In such an instance, there is no credible evidentiary basis supporting an alternative ground of affirmance.

{¶ 44} In summary, I don't suggest that Trooper Keener was being untruthful in his testimony concerning the Highway Patrol Policy. However, the issue is not whether my colleagues in the majority and I believe Trooper Keener, but whether we can discern that the trial court believed him. Here, there is no finding of fact by the trial court that Trooper Keener's testimony concerning the Highway Patrol Policy was credible and, therefore, nothing upon which we may rely in upholding the search on the basis of that policy.

## II. The Highway Patrol Policy Violates *Arizona v. Gant*

{¶ 45} Even if we could rely upon Trooper Keener's testimony concerning the Highway Patrol Policy, the search cannot be upheld upon the basis of the policy. Trooper Keener testified that it is the standard policy of the Highway Patrol that an arrested person's belongings, including a female arrestee's purse, accompany her to the jail and that the personal belongings are searched before placement in the police cruiser. According to

Trooper Keener, the purpose of the search is to promote officer safety and to discover evidence of a crime. This was the totality of the evidence concerning the existence, content, and purpose of the Highway Patrol Policy. Based upon that evidence, the majority concludes that the search of appellant's purse was a valid inventory search.

{¶ 46} A fundamental flaw with the majority's reasoning is that they proceed upon the incorrect premise that the Highway Patrol Policy is an inventory policy and the search of appellant's purse was an inventory search. Scrutiny of the purposes of the Highway Patrol Policy and its execution does not support this premise. As the majority notes, an inventory policy is characterized by its purposes of protection of a suspect's property and avoidance of false theft claims against law enforcement authorities. These purposes are served by cataloging the property and obtaining verification of the accuracy of the catalogue from the property owner. Trooper Keener's description of the Highway Patrol Policy indicates it consists of two separate components. First, retrieving an arrestee's personal belongings to accompany the individual to the jail. Second, a search of the personal belongings for weapons and contraband. While retrieving appellant's purse from the vehicle may serve the purpose of protecting her property, the search of the purse did not. There is no evidence that Trooper Keener catalogued the contents of the purse, verified the accuracy of the catalogue with appellant, or that the Highway Patrol Policy even provided for a verified catalogue of the property. The search of the purse, as Trooper Keener's testimony indicates, was simply to discover weapons and contraband and not to protect the contents of the purse or avoid false theft claims. Therefore, the Highway Patrol Policy does not justify the search of the contents of the purse as an inventory. That being the case, inventory search jurisprudence is not applicable to the analysis of whether the search of the purse comports with the Fourth Amendment. Rather, the analysis of the legality of the search must focus on whether a search of the purse for weapons and contraband is justified under the circumstances.

{¶ 47} In *Arizona v. Gant*, 556 U.S. 332, the United States Supreme Court considered whether the search of an arrestee's vehicle was a proper search incident to his arrest. The Supreme Court, noting that the justification for a search incident to arrest is to prevent destruction of evidence and to insure officer safety, reiterated that the areas of a vehicle accessible to an arrested individual are within the scope of a search incident to arrest. However, because Gant and his companions were secured outside of the vehicle at the time police searched and discovered cocaine in the pocket of a jacket on the backseat of the vehicle, the Supreme Court found the search of the vehicle and jacket violated the Fourth Amendment. The Supreme Court observed:

> Neither the possibility of access nor the likelihood of discovering offense-related evidence authorized the search in this case. Unlike in *Belton*, which involved a single officer confronted with four unsecured arrestees, the five officers in this case outnumbered the three arrestees, all of whom had been handcuffed and secured in separate patrol cars before the officers searched Gant's car. Under those circumstances, Gant clearly was not within reaching distance of his car at the time of the search.

*Id.* at 344.

{¶ 48} This case is similar to *Gant* in all pertinent respects. Like *Gant*, this case involved the search of the personal effects of an arrestee. Like *Gant*, the personal effect searched was not accessible to appellant at the time of the search because she was handcuffed in the backseat of a police cruiser. Like *Gant*, officer safety and preservation of evidence was the justification for the warrantless search. Based upon those circumstances, *Gant* held that the search was a violation of the Fourth Amendment because the interests of officer safety and preservation of evidence were not implicated due to the inaccessibility of the item searched to the arrestee. Like *Gant*, neither are those interests implicated here. Therefore, the Highway Patrol Policy may not serve as a basis for upholding the search of appellant's purse.

{¶ 49} Regardless of how it may be labelled, the Highway Patrol Policy, as described by Trooper Keener, constitutes an extension of a search incident to arrest beyond what is constitutional under *Gant.* Recasting the search of appellant's purse as an inventory search does not remove it from *Gant's* ambit. The import of the majority opinion is to permit local law enforcement agencies to adopt policies authorizing searches inconsistent with Fourth Amendment protections against unreasonable searches and seizures, thus subordinating the Fourth Amendment to those policies.

### III. Conclusion

{¶ 50} I concur with the majority in rejecting the trial court's basis for upholding the search of appellant's purse as proper under inevitable discovery pursuant to the automobile exception to the Fourth Amendment's warrant requirement for the simple reason that appellant's purse was no longer in the vehicle at the time Trooper O'Neal observed the gel cap lying on the floorboard which gave rise to probable cause to search the vehicle pursuant to the automobile exception.

{¶ 51} Based upon the circumstances there may very well have been probable cause to search appellant's purse. However, that there may be probable cause to search the purse does not justify a warrantless search in this context. My dissent is restricted to the on-the-scene search of the purse by Trooper Keener.

{¶ 52} With regard and respect for my colleagues in the majority, I dissent from their opinion that the search of appellant's purse was a constitutional inventory search pursuant to the Highway Patrol Policy.

{¶ 53} I would reverse.