Robb, P.J.
{¶1} Defendant-Appellant Leonard Sykes appeals the decision of Mahoning County Common Pleas Court denying his motion to suppress the drugs found during the inventory search of his vehicle. Two issues are raised in this appeal. The first is whether the police department's inventory search policy is so expansive that it makes all inventory searches evidentiary searches. The second issue is whether the Ohio Supreme Court's recent holding in State v. Banks-Harvey , 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262 overruled its prior decision in State v. Hathman , 65 Ohio St.3d 403, 604 N.E.2d 743 (1992).
{¶2} For the reasons expressed below neither issue has merit. The inventory search policy complied with the Ohio Supreme Court's decision in Hathman and *399 Banks-Harvey did not overrule Hathman . Furthermore, the arguments made during the suppression hearing did not include the argument that the inventory search policy was so expansive to be considered a violation of the Fourth Amendment protections against unreasonable search and seizure. Thus, in addition to being meritless, the argument was waived. The trial court's decision is affirmed.
Statement of the Case
{¶3} On January 14, 2017 Appellant was driving eastbound on State Route 224 when Sergeant Paul Grimes of the Boardman Police Department stopped Appellant for speeding. 11/1/17 Suppression Tr. 6, 8. Upon questioning Appellant, Sergeant Grimes observed an odor of marijuana coming from the car and noticed Appellant's red, blood shot eyes. Appellant advised the sergeant that he had smoked marijuana 20 minutes prior to the stop. 11/1/17 Suppression Tr. 9, 11. At that point the sergeant called for another officer to come to the scene; the sergeant had probable cause to search the vehicle. 11/1/17 Suppression Tr. 10.
{¶4} While the vehicle was searched, Appellant's name was run through the computer system. It was discovered that he had several license suspensions in Ohio, and there were warrants for his arrest from Austintown and Struthers. 11/1/17 Suppression Tr. 10.
{¶5} The probable cause search of the vehicle did not result in discovery of anything illegal. 11/1/17 Suppression Tr. 31. However, Appellant was arrested for the warrant out of Struthers.
{¶6} Sergeant Grimes decided to have the vehicle towed and started an inventory search. 11/1/17 Suppression Tr. 12-13. In response to the sergeant's lights, Appellant stopped the vehicle at the Shell Station at the corner of State Route 224 and South Avenue; he parked the vehicle at a gas pump. 11/1/17 Suppression Tr. 9, 12-13. The location of the vehicle was part of the reason Sergeant Grimes decided to have the vehicle towed. 11/1/17 Suppression Tr. 12-13. The sergeant admitted he could have allowed Appellant to call a relative or someone to come and get the vehicle. 11/1/17 Suppression Tr. 35. However, because Appellant lived in the Pittsburgh area, the sergeant determined it would take too long to have that done. 11/1/17 Suppression Tr. 36-37. Instead, the sergeant opted to have the vehicle towed.
{¶7} Boardman Police Department has an inventory search policy; there is a vehicle tow sheet that lists the areas to search in the vehicle. 11/1/17 Suppression Tr. 12, 17. The tow sheet indicates the officer is to check the spare tire compartment and look for the jack. 11/1/17 Suppression Tr. 15, 17. The spare tire compartment was under a large speaker box and the officer had to use force to open the compartment. 11/1/17 Suppression Tr. 14-15, 44, 47, 51. In the compartment he found a knotted shopping bag. 11/1/17 Suppression Tr. 13-14. Pursuant to the Boardman Police Department policy, the sergeant opened the bag. 11/1/17 Suppression Tr. 15. In the bag were "bindles" of heroin. 11/1/17 Suppression Tr. 13-14, 49. At that point the sergeant stopped the inventory search and had the vehicle towed to the Boardman police station. 11/1/17 Suppression Tr. 50.
{¶8} Appellant was indicted for trafficking heroin in violation of R.C. 2925.03(A)(2)(C)(6)(e), a second-degree felony and aggravated trafficking in violation of R.C. 2925.03(A)(2)(C)(1)(a), a fourth-degree felony. 4/13/17 Indictment. The indictment contained a forfeiture specification. 4/13/17 Indictment. The trafficking heroin count of the indictment alleged Appellant trafficked more than 100 units but less than 500 units of heroin. The aggravated *400 trafficking count was for the drug Fentanyl.
{¶9} Appellant entered a not guilty plea and filed a motion to suppress. In the motion to suppress, Appellant argued the inventory search did not conform to the standardized practices and procedures of the Boardman Police Department. 8/2/17 Motion to Suppress.
{¶10} The state filed a motion in opposition to the motion to suppress arguing the sergeant followed the established procedures. 10/31/17 Motion in Opposition. Attached to the motion in opposition was Boardman Police Department's Vehicle Towing and Impound Procedural Manual. 10/31/17 Motion in Opposition.
{¶11} The trial court overruled the motion to suppress. 11/6/17 J.E. It held the sergeant followed the inventory search policy of the Boardman Police Department. 11/6/17 J.E.
{¶12} Thereafter, Appellant entered a no contest plea to the indictment. The trial court accepted the plea, found Appellant guilty, and sentenced Appellant to an aggregate two and a half years in prison. 11/28/17 J.E. Appellant received two years for trafficking heroin and six months for aggravated trafficking of Fentanyl. The court ordered the sentences to be served consecutively.
{¶13} Appellant filed a timely notice of appeal asserting the suppression ruling was incorrect.
Standard of Review
{¶14} "Appellate review of a motion to suppress presents a mixed question of law and fact." State v. Burnside , 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. As the trial court is best suited to evaluate witness credibility, an appellate court must uphold the findings of fact if they are supported by competent, credible evidence. Id. However, an appellate court must independently determine as a matter of law whether the trial court met the applicable legal standard. Id.
{¶15} Applying that standard of review, we now turn to the assignments raised.
First Assignment of Error
"The Boardman Police Department inventory search policy is so expansive that it makes all inventory searches evidentiary searches and is, therefore, violative of the constitutional protections against search and seizure in the Fourth Amendment."
{¶16} The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. Article I Section 14 of the Ohio Constitution has been interpreted to afford at the least the same protections as that of the Fourth Amendment of the United States Constitution. State v. Leak , 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 13. Under the Fourth Amendment, warrantless searches are per se unreasonable without prior approval by a judge or magistrate, subject to only a few specific exceptions. Arizona v. Gant , 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), citing Katz v. United States , 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One exception is an inventory search conducted pursuant to law enforcement's community-caretaking function. Leak , 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821 at ¶ 15 ; State v. Mesa , 87 Ohio St.3d 105, 108, 717 N.E.2d 329 (1999).
{¶17} The Ohio Supreme Court has explained there are three main objectives to inventory searches: (1) protecting an individual's property while it is in the custody of the police, (2) protecting the police from claims of lost or stolen property, and (3) protecting the police from danger. Leak at ¶ 21. Inventory searches of lawfully impounded vehicles are reasonable under the *401 Fourth Amendment when performed in accordance with standard police procedure and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded vehicle. Id. at ¶ 22, citing Blue Ash v. Kavanagh , 113 Ohio St.3d 67, 2007-Ohio-1103, 862 N.E.2d 810, ¶ 11 ; Hathman , 65 Ohio St.3d 403, 604 N.E.2d 743, paragraph one of syllabus. "If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers." Hathman , 65 Ohio St.3d 403, 604 N.E.2d 743 at paragraph two of syllabus, citing Florida v. Wells , 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990) and Colorado v. Bertine , 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987).
{¶18} In the case at hand, in the suppression motion and during the suppression hearing, Appellant argued the inventory search did not conform to the standardized practices and procedures of the Boardman Police Department. He claimed the search of the trunk area, underneath the speaker, exceeded the permissible scope of the inventory search because Sergeant Grimes could not plausibly believe Appellant kept valuables in that area of the vehicle. And as to the plastic bag, Appellant argued the sergeant could not plausibly believe it contained valuables. 8/2/2017 Motion to Suppress. In response, the state attached to its motion in opposition to the motion to suppress the Boardman Police Department's Vehicle Towing and Impoundment Policy and argued the policy was followed. 10/31/17 Motion in Opposition to Motion to Suppress.
{¶19} Appellant argues on appeal the inventory search policy is so expansive that it serves no lawful inventory purpose and instead crosses over to allow for the police to conduct an evidentiary search of every vehicle impounded. When that policy is taken in conjunction with the discretionary, not mandatory, decision of Sergeant Grimes to impound the vehicle, Appellant contends the search was unconstitutionally evidentiary.
{¶20} Appellant is correct that the impoundment of the vehicle was not required. The Boardman Police Department Inventory Search Policy sets forth when impoundment is mandatory and when it is discretionary. Section 125.20 of the Policy states officers "may" order impoundment when the operator of the vehicle is physically arrested and removed from control of the vehicle. Section 125.22 states the officer should consider impoundment of the vehicle when the vehicle is on private property not owned by the driver, the vehicle cannot be released in a timely manner, which is defined generally as 60 minutes, or the vehicle owner or operator is impaired to the extent that he cannot make a valid decision regarding disposition of the vehicle.
{¶21} Here, the vehicle was stopped at the Shell Gas Station, which is a business and private property. 11/1/17 Suppression Tr. 9, 12-13. Furthermore, the officer testified the vehicle was in front of a gas pump. 11/1/17 Suppression Tr. 12-13. Patrons would not be able to utilize that pump to purchase gas if the vehicle was left in that position. The officer also testified Appellant was a Pennsylvania resident and his home address was located somewhere in Pittsburgh roughly 60 minutes away. 11/1/17 Suppression Tr. 36-37. The officer did not ask Appellant if he could call someone to pick up the vehicle. The officer admitted it was not mandatory to impound *402 the vehicle under the Boardman Police Department Policy, but decided to impound the vehicle because of the amount of time it would take to have a relative or friend pick it up and the placement of the vehicle. 11/1/17 Suppression Tr. 35.
{¶22} The Impoundment Policy also states that all impounded vehicles must be inventoried. Section 125.51. An inventory is necessary for the protection of the department and towing company from unfounded claims of loss or damage, for the protection of the owner from actual loss or damage, and for the protection of the police, the towing company and the public due to hazardous contents of the vehicle, including but not limited to firearms. Section 125.50. The trunk is required to be inventoried and closed containers are to be opened and inventoried unless the containers cannot be opened without damaging them. Section 125.52(5). Locked items can be opened and inventoried if the officer can readily obtain a key or combination to the lock. Section 125.52(5). The policy indicates an inventory search cannot be a pretext to carrying out an investigative search. Section 125.53.
{¶23} The testimony in this case was contradictory as to whether the spare tire well could be accessed without physically unbolting the speaker sitting on the lid to the spare tire well. The officer testified the speaker was sitting on the spare tire compartment and he could lift up the lid 8-10 inches. 11/1/17 Suppression Tr. 14, 51. Appellant testified the speaker was bolted down and the lid could not be lifted. 11/1/17 Suppression Tr. 64.
{¶24} Sergeant Grimes testified that part of the inventory search and the Boardman Police Department's Inventory Search Policy check list required the officer to look for the spare tire and jack. 11/1/17 Suppression Tr. 15, 17. It was in the spare tire compartment a knotted plastic grocery bag was found. The officer opened this bag pursuant to the department policy which permitted the opening of closed containers. Inside bindles of heroin were found.
{¶25} Appellant attempts to liken this case to an Eighth Appellate District case where the opening of an aerosol can with a false bottom found in the trunk of a vehicle violated the Fourth Amendment protection against unreasonable search and seizures. State v. Seals , 8th Dist. No. 90561, 2008-Ohio-5117, 2008 WL 4435730. In that case, the state argued the search was a permissible inventory search of an impounded vehicle. Id. The court of appeals disagreed with the state. Id. at ¶ 24 -28. The officer in that case did not testify about a specific policy regarding the opening of closed containers. Id. at ¶ 24. Furthermore, the court noted the officer gave varying reasons why he opened the container:
The officer in the instant case also gave vague and sometimes conflicting testimony regarding the purpose of opening closed containers. He stated he opened closed containers in order to determine if contraband was in them, but also stated he did it to look for valuables.
Id. at ¶ 25.
{¶26} The court stated even if it could conclude the officer gave sufficient testimony regarding the standard police policy, the testimony clearly indicated the officer opened the container because he believed contraband was inside; "He stated he was aware contraband was often hidden in aerosol cans; therefore, he had a suspicion contraband was in the can." Id. at ¶ 27. That statement indicated the inventory search was conducted with investigatory intent, was used as a pretext for searching for more evidence, and thus, did not constitute a true inventory search. Id. at ¶ 28.
*403 {¶27} The Eighth Appellate District also explained that although defense counsel requested the written inventory policy during discovery, it was never produced. Id. at ¶ 26 ("[W]hen defense counsel specifically requests the policy in a discovery motion, surely the State has a duty to produce the policy. Failure to do so eviscerates defense counsel's attempts to ascertain what the policy regarding inventorying closed containers is beyond the officer's vague testimony stating the policy allows him to open 'accessible containers.' ").
{¶28} Seals is not akin to the case before us. The policy was attached to the motion in opposition to the suppression motion. The officer testified about the policy and indicated his search was done for purposes of inventory. The officer did not indicate he opened the closed container because he believed there was contraband inside. The testimony did not indicate he opened the tire compartment because he believed there was contraband inside. The officer clearly stated he inventoried the vehicle pursuant the department's policy and followed the inventory checklist.
{¶29} As aforementioned, the Ohio Supreme Court has explained that an inventory search is reasonable when it is performed in good faith pursuant to standard police policy, and "when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded vehicle." State v. Robinson , 58 Ohio St.2d 478, 480, 391 N.E.2d 317 (1979). See also Mesa , 87 Ohio St.3d at 108, 717 N.E.2d 329. "If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers." Hathman, 65 Ohio St.3d 403, 604 N.E.2d 743 at paragraph two of the syllabus.
{¶30} The facts in this situation indicate the search was reasonable and there was a standardized policy on opening closed containers that was followed; nothing in the record suggests this search was not performed in good faith. There is no indication the search was performed with investigatory intent. Given the law and the facts, the trial court's denial of the suppression motion was correct.
{¶31} Additionally, it is noted the argument that the Boardman Police Department's Inventory Policy is too expansive was not argued to the trial court. As stated above, the argument to the trial court was that the policy was not followed. This expansive argument is raised for the first time during this appeal.
{¶32} The argument could be deemed waived and reviewed under plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum , 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990), quoting State v. Long , 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. An appellate court's invocation of plain error is discretionary and requires the existence of an obvious error which affected substantial rights. State v. Rogers , 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶¶ 22-23.
{¶33} Even if this court invoked the plain error doctrine, the argument fails. As explained above, there is a policy; the policy was followed; and the policy specifically indicates the purpose of the policy is to protect property and to protect the police *404 department and towing company from lawsuits. The policy also indicates the inventory search cannot be a pretext for an investigative search. The policy conforms to case law and nothing in the record suggests the inventory search was a pretext for an investigative search.
{¶34} This assignment of error is meritless.
Second Assignment of Error
"The holding in State v. Hathman (1992) 65 Ohio St.3d 403, 604 N.E.2d 743, is unconstitutional in light of the Ohio Supreme Court's more recent holding in State v. Banks-Harvey , 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, insomuch as police department policies can no longer transform an unreasonable search to a lawful one, requiring suppression of the evidence here found."
{¶35} In Hathman the Ohio Supreme Court held, "If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers." Hathman , 65 Ohio St.3d 403, 604 N.E.2d 743, paragraph two of the syllabus.
{¶36} Appellant contends that holding is rendered unconstitutional by the recent Ohio Supreme Court's Banks-Harvey decision. Appellant implicitly acknowledges the Banks-Harvey decision did not explicitly overrule the Hathman decision; he argues when the Banks-Harvey decision is compared to the Hathman decision, one must conclude Banks-Harvey overruled Hathman .
{¶37} The Banks-Harvey decision addressed "whether a law-enforcement agency's policy that an arrestee's personal effects must accompany the arrestee to jail can, on its own, justify the warrantless retrieval of an arrestee's personal effects from a location that is protected under the Fourth Amendment to the United States Constitution." State v. Banks-Harvey , 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 1. The Court concluded it could not and that a search of personal effects obtained as a result of following such a policy is not a valid inventory search. Id.
{¶38} In Banks-Harvey , Jamie Banks-Harvey was driving a vehicle that was stopped for speeding. Id. at ¶ 2. Her boyfriend and owner of the car was in the passenger seat. Banks-Harvey did not have a valid driver's license. Id. She was patted down, handcuffed, and placed in the police cruiser. Id. at ¶ 3. Her purse was left in her boyfriend's vehicle. Id. A search of her name and social security number revealed she had outstanding arrest warrants for possession of heroin. Id. Banks-Harvey's boyfriend had no outstanding warrants. Id.
{¶39} Although asked, the boyfriend did not consent to the search of his vehicle. Id. at ¶ 4. The officer then retrieved Banks-Harvey's purse from the boyfriend's vehicle and began searching it. Id. at ¶ 5. Drugs were found in the purse and the officer then searched the vehicle. Id. Clear capsules and a needle were found in the vehicle, however, no one was arrested or charged for the items found in the vehicle. Id. The vehicle was not impounded and the boyfriend (owner of the vehicle) was permitted to drive it away. Id.
{¶40} Due to the items found in Banks-Harvey's purse, she was charged with felony drug possession. Id. at ¶ 6. She moved to suppress the items arguing her Fourth Amendment rights were violated. Id. The state argued the items fell under exceptions to the Fourth Amendment's search warrant requirement, specifically the search incident to arrest, plain view, and *405 inventory search exceptions. Id. The trial court found none of those exceptions applied, but concluded the contraband would have inevitably been discovered. Id. ¶ 7-10. Accordingly, the trial court denied the motion to suppress. Id.
{¶41} The appellate court affirmed the trial court's decision, albeit for different reasons. Id. at ¶ 12. It rejected the trial court's conclusion that the evidence would have been inevitably discovered. Id. However, it concluded the retrieval of the purse from the vehicle was done pursuant to a standard Ohio State Highway Patrol policy, and the drugs and paraphernalia found in the purse were admissible under the inventory search exception. Id.
{¶42} The Ohio Supreme Court disagreed with the appellate court's rationale. In reaching the conclusion that this was not a valid inventory search, the Ohio Supreme stated:
The question in this case is not whether the purse was taken from the car pursuant to a standardized law-enforcement policy, but whether such a policy was sufficient justification for the warrantless retrieval of the purse from the car. We conclude that it was not and therefore that the subsequent search of the purse did not qualify as a valid inventory search, because the purse had not lawfully come into the custody of the police.
Id. at ¶ 22.
{¶43} The key in Banks-Harvey is that the purse was not lawfully in the custody of the police when it was "inventoried"; "Neither her purse, nor the vehicle that contained her purse, came into police custody as a result of her arrest." Id. at ¶ 23. As the facts show, the vehicle was not impounded; Banks-Harvey's boyfriend, who was the owner of the vehicle, was permitted to drive the vehicle away. Id. at ¶ 5. The Ohio Supreme Court noted that it took no issue with the reasonableness of an administrative policy requiring the search and inventory of personal items that come into police custody as a result of arrest. Id. at ¶ 23. It noted had the officer obtained the purse because Banks-Harvey requested it, or if she had been arrested on the street a completely different result would have been reached. Id. at ¶ 24. "But a law-enforcement policy that an arrestee's personal effects go with them to jail, does not, by itself, authorize an officer to retrieve the arrestee's personal effects from a place that is protected under the Fourth Amendment." Id.
{¶44} Nothing in the Banks-Harvey decision indicates paragraph two of the syllabus of the Hathman decision is no longer good law. Rather, the facts and the statements made by the Ohio Supreme Court in Banks-Harvey suggest that if the vehicle had been impounded the search of the purse would have been permitted as a valid inventory search pursuant to Hathman . As stated above, in Banks-Harvey the purse did not lawfully come into the custody of the officer prior to it being searched. Had the vehicle been impounded, the vehicle and its contents, including the purse, would have been in the custody of the police. Accordingly, any search performed in good faith in accordance with a standardized policy would have been permissible if the evidence did not demonstrate that the procedure involved was merely a pretext for an evidentiary search of the impounded vehicle. Mesa , 87 Ohio St.3d at 108, 717 N.E.2d 329 ; Hathman, 65 Ohio St.3d 403, 604 N.E.2d 743 at paragraph two of the syllabus; Robinson , 58 Ohio St.2d at 480, 391 N.E.2d 317.
{¶45} Consequently, Banks-Harvey does not indicate the inventory search in the case at hand violated the Fourth Amendment of the United States Constitution. Furthermore, it does not appear Banks-Harvey overruled Hathman ; without *406 an explicit indication from the Ohio Supreme Court that it is overruling Hathman , this court is not inclined to hold otherwise.
{¶46} For the above stated reasons, this assignment of error is meritless.
Conclusion
{¶ 47} Both assignments of error are meritless. The trial court's suppression ruling is affirmed.
Donofrio, J., concurs.
Bartlett, J., concurs.